Betty B. RAWLS, Plaintiff-Appellee
Cross Appellant,

v.

The CONDE NAST PUBLICATIONS,
INC., Defendant-Appellant Cross
Appellee.

No. 30009.

United States Court of Appeals,
Fifth Circuit.

July 13, 1971.

Rehearing Denied Sept. 9, 1971.

Davisson F. Dunlap, Sears, Dunlap &
Sears, Jacksonville, Fla., for appellant.

C. Harris Dittmar, John A. deVault,
III, Jacksonville, Fla., for appellee; Be-
dell, Bedell, Dittmar, Smith & Zehmer,
Jacksonville Fla., of counsel.

Before TUTTLE, AINSWORTH and
SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

In a two count complaint alleging un-
lawful trespass and invasion of privacy,
the appellee-cross appellant, Mrs. Betty
B. Rawls, a resident of Jacksonville,
Florida, brought suit in the Circuit
Court for Duval County, Florida,

against appellant-cross appellee, The Conde Nast Publications, Inc., a New York corporation engaged in the business of publishing magazines (including Vogue magazine). We will ordinarily refer herein to the parties as plaintiff and defendant as they were styled in the trial court. The case was removed on diversity grounds, Title 28, U.S.C., Section 1441, to the United States District Court for the Middle District of Florida.

Trial was had to a jury which returned a verdict for the defendant on Count One of the complaint. With respect to Count Two, the verdict was for the plaintiff in the amount of $5,000 compensatory damages and $50,000 punitive damages. The district judge denied plaintiff's motion for a new trial as to Count One and defendant's motion for judgment notwithstanding the verdict as to Count Two and judgment was entered on the verdict. The case is here on Nast's appeal as to Count Two and Mrs. Rawls' cross-appeal as to Count One. For reasons set out below, we affirm the judgment of the district court as to Count One and reverse and render as to Count Two.

The following facts emerge from the evidence before the jury. In October, 1968, Vogue magazine sent a team consisting of Mrs. Alexandra Penney, Fashion Promotion Editor of Vogue, Norman Parkinson, a fashion photographer, and a professional model to Jacksonville, Florida, to photograph the model on location in Florida, wearing clothing to be featured in the February 1, 1969, issue of Vogue. Pictures were taken at several locations in Jacksonville and elsewhere in North Florida, so as to prepare a layout of several pages. Each picture featured a Jaguar automobile and the same model in examples of B. H. Wragge sports clothing. Mr. Parkinson contacted William Morgan, a Jacksonville architect, for the names and locations of homes which Mr. Morgan had designed in Jacksonville, for the purpose of determining their suitability as locations for photographing the model. He saw the exterior of Mrs. Rawls' home

and expressed a wish to use it as one of his locations. Mrs. Rawls was a recent divorcee. The architect's wife, Mrs. Morgan, on October 31, 1968, offered to make arrangements with Mrs. Rawls for use of the home for photographing the following day.

At about 3:00 to 4:00 P.M. on November 1, 1968, Mrs. Penney, Mr. Parkinson, the model, the photographer and a professional hair dresser arrived at the Rawls residence. No confirmation of the right to photograph Mrs. Rawls' home had been received from Mrs. Morgan. Mrs. Rawls was not at home. After speaking with the plaintiff's eleven year old son, David Rawls, Mrs. Penney saw Mrs. Rawls' fourteen year old daughter, Zan Rawls, arrive home. Mrs. Penney explained to her that the party was from Vogue magazine and that Mrs. Morgan was supposed to have made arrangements to photograph the house. Zan Rawls tried to telephone her father to see if he had been contacted, but was unable to do so. Mrs. Penney called Mrs. Morgan and asked if she had been able to get in touch with Mrs. Rawls. Mrs. Morgan said, "No", but stated that she thought it would be all right to photograph there. Zan Rawls told Mrs. Penney that it would be all right to come in and take pictures. Both children assisted in taking the fashion pictures, which utilized the interior of the house and one of the chairs and a footstool as a background for the fashion model.

About thirty to forty-five minutes later Mrs. Rawls returned home. From this point the accounts of the witnesses differed as to what transpired. The plaintiff testified at trial that she was very much frightened when she returned to find several strangers in her home engaged in a photography session. She further testified that she requested the defendant's employees to leave immediately. Her cross-examination of the Nast group sought to establish these points. The testimony of Mrs. Penney, Mr. Parkinson and others of their party, on the other hand was to the general ef-

fect that the plaintiff did not appear unduly upset upon her return and that she acquiesced in the expressed desire of Mr. Parkinson to remain on the premises and complete the picture taking under the existing light conditions. Mrs. Penney and her associates thereupon completed their photographing work and departed the secene. This took thirty minutes or less to accomplish.

The two Morgans ate dinner with Mr. Parkinson and Mrs. Penney that evening at a Jacksonville Beach restaurant, The Chateau. During dinner Mrs. Penney expressed regret that they had startled Mrs. Rawls that afternoon, and Mrs. Morgan replied "Don't worry about it. It's perfectly all right. The house has been photographed many times".

On December 6, 1968, the plaintiff's attorney, Mr. Dittmar, appeared at the New York offices of Vogue magazine. He inquired about the photographs that had been taken in Jacksonville on November 1, 1968, and was shown a fashion layout which was to be published in the February 1, 1969 issue of the magazine. The layout included one of the pictures taken from inside the plaintiff's home looking out toward the Jaguar automobile with Mrs. Rawls' patio in the background. The model was shown full figure, in profile, seated in a lawn chair, and the Rawls' Dalmation dog appeared in the picture. Mr. Dittmar thereupon informed defendant's counsel that Mrs. Rawls objected to the publication of any picture taken in her home on November 1, 1968. The defendant refused to withdraw the picture from publication, stating that the February 1 issue was too far advanced toward final form to permit this, but did eliminate from the photographic negative everything which identified it with or related to Mrs. Rawls' house, yard, dog and furnishing with the exception of the chair in which the model was sitting and a footstool. The chair's appearance was considerably altered by retouching the negative. As so changed, the fashion picture appeared in the February 1, 1969 issue of Vogue in the lower left-hand corner of page 50, as part of a layout of several pages featuring B. H. Wragge clothing and Jaguar automobiles.

It suits our purposes to deal with Mrs. Rawls' cross-appeal as to Count One before proceeding to a discussion of the main appeal of Conde Nast as to the recovery under Count Two.

## I. The Intrusion Count

Count One of the complaint alleged that the defendant, acting through its employee-agents, invaded the plaintiff's privacy by means of a wrongful entry and unauthorized physical intrusion into the plaintiff's home on November 1, 1968. It further alleged that, as a result of the defendant's wrongful acts, the plaintiff had been deprived of her right to privacy and of her right to the exclusive and unfettered use and possession of her home, causing the plaintiff mental and physical suffering and to become frightened, nervous, upset and insecure in her home. Count One further alleged that the defendant's acts had been committed wilfully, unlawfully, maliciously, and with total and wanton disregard for plaintiff's rights, for which compensatory damages in excess of $1,000 and punitive damages of $1,-000,000 were sought. The demand for compensatory damages in excess of $1,-000 was framed to meet the lower jurisdictional limitations of the state court of general jurisdiction. The trial judge, at the request of the defendant, and over the objections of the plaintiff, gave the following instructions respecting Count One to the jury as part of his general charge:

> "If you find, ladies and gentlemen, from a preponderance of the evidence that the plaintiff, Mrs. Rawls, after she came home, by her conduct gave her actual or implied consent for the defendant's employee to remain in her home and to continue to take photographs, then you cannot award her any damages as to Counts One and Two for wrongful entry or invasion of privacy."

During the course of the jury's deliberations, the jury foreman sent an inquiry to the trial judge:

"If the Conde Nast people entered without Mrs. Rawls' consent, but stayed with her implied consent—are they guilty of trespass?

Plaintiff's counsel urged the trial judge to answer the question in the affirmative. The trial judge declined to do so. Instead, upon the jury's return to the courtroom, he reread a portion of his original charge, including the above-quoted excerpt. The giving of this instruction is assigned as error by the plaintiff on her cross-appeal.

In Thompson v. City of Jacksonville (Fla. 1st D.C.A.1961), 130 So.2d 105,[1] it was held that a complaint charging that city police officers negligently broke into and searched the plaintiff's premises with negligent disregard for the plaintiff's right to privacy was sufficient to state a cause of action for invasion of privacy. In her appeal, the plaintiff argues that the trial judge erroneously obstructed her efforts to prove a *Thompson* type case to the jury by injecting the allegedly irrelevant factor of consent into its deliberations.

Harper and James, with regard to the defense of consent to a tort, states:

"the general principle that one may not complain of acts to which he had consented is applicable to entries and other intrusions on land. A trespass on land is an intentional intrusion without the consent of the possessor and without a privilege conferred by law irrespective of the possessor's consent. Indeed, the word 'intrusion' implies that there is no consent since one who has expressed a willingness that another come onto his land will hardly regard the entry which he has thus authorized as an 'intrusion.'

"Frequently, perhaps more often than otherwise, the consent will be implied rather than expressed. Consent may be implied from custom, local or general, from usage or from the conduct of the parties, or some relationship between them." Harper and James, The Law of Torts, Sec. 1.11, page 38.

Dean Prosser discusses the defense of consent in the following manner:

"Chief among the other defenses available in a privacy action is that of the plaintiff's consent to the invasion, which will bar his recovery as in the case of any other tort * * *" Prosser, Law of Torts, 3rd Ed. 1964, Sec. 112, page 850.

The Restatement of the Law of Torts more closely addresses itself to the plaintiff's view of the facts of her case in its discussion of subsequent assent to a tortious act:

"Except in the case of ratification, subsequent assent by the injured person to a tortious act does not of itself terminate a cause of action. There is no principle under which a tort can be condoned; an agreement not to sue is effective only if it has the elements of an enforceable contract. Thus where one assaults another, a statement by the injured person that he forgives the assault does not terminate the cause of action." Restatement of the Law of Torts, Am.Law.Inst., (1939), Section 892, comment c, page 841.

 We agree with the Restatement and the plaintiff that, strictly speaking, the defendant may avail itself of the defense of consent only if the consent existed at the time the intrusion took place. Nevertheless, we conclude that the lower court's judgment should be upheld even though the jury was imprecisely instructed in terms of the doctrine of consent.

The legal theory underlying Florida's cause of action for the tortious invasion of privacy is succinctly set out in 32

---

1. We attempt to follow Florida substantive law in this diversity case as to both counts, under Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Neither party to this appeal questions that it is appropriate so to follow Florida law.

Florida Jurisprudence, Torts, Section 9, pages 136–137:

"The Florida court recognizes a right of privacy, distinct in and of itself and not merely incidental to some other right, for the violation of which an action for damages will lie. The right of privacy is essentially the right to be let alone. The right is violated by the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities."

Our research and the research of counsel in this matter have failed to disclose any reported Florida cases dealing with the exact point, but we believe that Florida courts, presented with a similar factual situation, would sanction a jury instruction similar to the one objected to by plaintiff but would couch it in terms of waiver or estoppel rather than consent. As stated in the Florida Jurisprudence discussion quoted above, the cause of action for the tortious invasion of privacy has as a principal objective the compensation of a party for the "outrage" or "mental suffering, shame, or humiliation" caused by the invasion. If at the time of the alleged invasion the plaintiff made no meaningful effort to protect her privacy or demonstrated no visible emotional distress, but rather acquiesced in the continued presence of the defendant's employees in her home, we can perceive no legitimate reason for preventing the jury from taking the plaintiff's reactions to the presence of the defendant's employees into account in determining her entitlement to recover damages. Although it may have been error to instruct the jury in this case in terms of consent, the error was technical only, and not harmful. The trial judge's direction of the jury's attention to the actions and demeanor of the plaintiff upon her return to her home is not ground for reversal.

## II. The Publication Count

■ Count Two of the complaint realleged by reference Paragraphs 1–8 inclusive of Count One [2] and alleged further in substance: The discovery by plaintiff on December 6, 1968, of defendant's plan to publish one of the pictures taken in her home in the February 1, 1969 issue of "Vogue" magazine, plaintiff's immediate demand that defendant publish none of the November 1, 1968 photographs taken in her home or any captions, headlines, articles, stories or editorial material relating to or arising out of the illegal entry of her home, (paragraph 10); the wrongful publication of one of said photographs by defendant in the February 1, 1969 issue of "Vogue" on page 50 in an article entitled "from riches to wragge and jaguars", with knowledge of plaintiff's objection, (paragraph 11); and that thereby defendant wrongfully and maliciously invaded plaintiff's right of privacy, subjecting plaintiff to further mental and physical suffering. Again there was a demand for compensatory damages in excess of $1,000 and for punitive damages of $1,000,000.

2. Paragraphs 1–9 inclusive of Count One comprised generally its factual allegations of state court jurisdictional amount, identification and relationship of the parties, the Vogue party's wrongful entry, their setting up for and taking of pictures at Mrs. Rawls' home, Mrs. Rawls' return to find the strangers present in her home, her surprise, her fright and indignation, her request that the Vogue party leave immediately and their delay and refusal to leave until further photographs had been taken. The allegations of damage (paragraph 10), i. e., deprivation of the right to privacy, the right to the exclusive and unfettered use of her home, damage to her lawn, patio and furniture, plaintiff's mental and physical suffering, and resultant feeling of insecurity and lack of safety in her home, and that the defendant's wrongful acts were done wilfully, unlawfully, maliciously and with total and wanton disregard for plaintiff's rights (paragraph 11) were not carried forward into Count Two.

At the trial, the defendant established that the subject photograph had been significantly altered prior to its publication, so much so that it was impossible to identify the photograph as having been taken in the plaintiff's home. Citing the absence of any identification of the plaintiff's home in the published picture, the defendant moved for a directed verdict after both sides announced closed and for judgment notwithstanding the verdict after the jury delivered its verdict calling for $5,000 compensatory and $50,000 punitive damages. After denial of both motions judgment was entered for these amounts, timely followed by this appeal. Our examination of the record and study of applicable authorities convince us that the trial judge erroneously denied these motions. He should have granted judgment n.o.v. and entered final judgment for Conde Nast as to both counts.

Any consideration of Florida's jurisprudence respecting right to privacy must commence with Cason v. Baskin, 1944, 155 Fla. 198, 20 So.2d 243. That landmark Florida decision held that the plaintiff's complaint, which alleged that a description of a character by the defendant "sometimes known as Marjorie Kinnan Rawlings" in her book "Cross Creek" was so intimate and accurate as to unmistakably identify the plaintiff to her friends, stated a cause of action for the tort of invasion of privacy. Harms v. Miami Daily News, Fla.D.C.A. 3rd, 1961, 127 So.2d 715, at page 718, makes it clear that the plaintiff has the burden in such an action to prove that she has been publicly identified as a prerequisite to recovery for invasion of privacy. In our case the absence of public identification of the plaintiff's home or possessions (as already indicated, all possibility of identification was carefully obliterated before publication) precludes recovery and should have mandated the granting of defendant's motions by the trial judge. Text writers on the subject generally agree with this view. Very simply put, the plaintiff may not recover for invasion of privacy when, as here,

her privacy remains inviolate. Hanson, Libel and Related Torts, page 204 states:

"As in defamation, there must be some reasonable grounds for concluding that it is the plaintiff whose privacy had been invaded. Thus, recovery has been denied for the publication of photographs of only plaintiff's home, or of other possessions, with no further reference to the plaintiff. However, it is not necessary to name or picture the plaintiff in order to make actionable reference to him, if sufficient identification is otherwise made."

Prosser, Law of Torts, Section 112, page 841, puts it as follows:

"On the other hand there is no liability for the publication of a picture of his hand, leg or foot, or his house, his automobile or his dog, with nothing to indicate whose they are."

Finally, Hofstrader and Horowitz, in their The Right of Privacy, Section 5.7, page 44, state:

"Though a person may feel it is an invasion of his privacy, the law is clear, that the right is not infringed by merely publishing a picture of something that belongs to him. Thus, it is not actionable to publish an interior scene of a person's dwelling house, or of his automobile or of his dog, if his own likeness is not included."

Federal courts in other jurisdictions consistently have recognized that lack of public identification of the plaintiff disqualifies the plaintiff from recovery for invasion of privacy. Branson v. Fawcett Publications, Inc., 124 F.Supp. 429 (E.D.Ill.1954); Young v. That Was the Week That Was, N.D. Ohio 1969, 312 F. Supp. 1337, aff'd 6 Cir. 1970, 423 F.2d 265, are examples.

We have carefully examined the record in this case including the photograph in evidence in an effort to determine if the plaintiff's home was identifiable in the picture published in Vogue magazine. Not only was the plaintiff's home rendered unidentifiable as a result

of the defendant's retouching prior to publication, but even the picture of the chair in which the model was sitting was altered beyond recognition.

Our resolution of the identification issue makes it unnecessary for us to deal with the defendant's contention that the trial judge erred in submitting to the jury the appropriateness of punitive damages with respect to Count Two of the complaint. McLain v. Pensacola Coach Corp., 1943, 152 Fla. 876, 13 So.2d 221; Hutchinson v. Lott, Fla. 1st D.C.A. 1959, 110 So.2d 442.

■ One additional observation is in order. Counsel for Mrs. Rawls at oral argument and on brief seek to uphold the verdict for damages under Count Two by urging that the earlier *physical intrusion* (realleged in Count Two) made it unnecessary for publicity to be present or for identification to be possible to allow recovery, citing Fowler v. So. Bell Tel. & Tel. Co., 5 Cir. 1965, 343 F.2d 150, 156; Prosser on Torts, Sections 97 and 112, and Santiesteban v. Goodyear Tire and Rubber Co., 5 Cir. 1962, 306 F.2d 9, 11, emphasizing generally that *except in cases of physical intrusion* the tort of invasion of privacy must be accompanied by publicity. The argument appears to be that Count Two was some sort of hybrid count involving *both* unlawful physical intrusion (or trespass) *and* invasion of privacy by publication of the picture. The argument we think is afterthought and demonstrably unsound. A major flaw in the contention is that the jury by its verdict as to Count One specifically found Conde Nast not guilty of the claimed intrusion. It cannot then be included in Count Two as a make-weight to escape the necessity of proving publicity. We view the incorporation into Count Two of the portions of Count One describing the claimed intrusion or trespass as having been done simply by way of inducement, setting the background, not as an effort to plead some sort of combined cause of action. The claim in Count Two is one for invasion of privacy by publication of the picture, and may not be enlarged into something else. Mrs. Rawls and her counsel read into the cited authorities much more than they stand for.

*Fowler,* supra, held that "tapping a telephone" (without plaintiff's knowledge or consent) "amounts to an intrusion upon plaintiff's solitude as to which no publication of the overheard information is necessary" under Georgia law, citing McDaniel v. Atlanta Coca-Cola Bottling Co., 1939, 60 Ga.App. 92, 2 S.E. 2d 810.

In *Santiesteban,* which arose under Florida law we held that in absence of clear Florida precedent where a buyer of tires and tubes was current in his installment payments therefor, a claim was stated for recovery for invasion of privacy when it was alleged that agents of defendant tire company seller removed the tires and tubes from the car without complaint or notice to buyer and left the car standing on its rims in full view of buyer's fellow employees and others, and that legal certainty for want of jurisdictional amount was lacking where buyer sought more than $10,000 as punitive damages and as compensatory damages for embarrassment, humiliation and wounded feelings for two sleepless nights and medication as well as loss of use of the car. The statement quoted from *Santiesteban* is lifted out of context and is no support for Mrs. Rawls' position.

Reversed and rendered as to The Conde Nast Publications, Inc.'s appeal; affirmed as to cross-appeal of Betty B. Rawls.