549 So.2d 1374 (1989)
CAPE PUBLICATIONS, INC., Vince Spezzano, and Jere Maupin, Petitioners,
v.
Phillip HITCHNER and Barbara Hitchner, His Wife, Respondents.
No. 71554.
Supreme Court of Florida.
October 5, 1989.
Rehearing Denied November 9, 1989.
Jack A. Kirschenbaum of Wolfe, Kirschenbaum & Peeples, P.A., Cocoa Beach, Florence Snyder Rivas of Edwards & Angell, Palm Beach, and John B. McCrory, Robert C. Bernius and Patricia A. Ayers of Nixon, Hargrave, Devans & Doyle, Washington, D.C., for petitioners.
William E. Weller of Rose & Weller, Cocoa Beach, for respondents.
George K. Rahdert and Alison M. Steele of Rahdert Acosta, P.A., St. Petersburg, Will Strickland of Ferrero, Middlebrooks, Strickland & Fischer, P.A., Fort Lauderdale, Gregg D. Thomas of Holland & Knight, Tampa, Richard Ovelmen, Miami, Joseph P. Averill, Miami, William G. Mateer and David L. Evans of Mateer, Harbert & Bates, Orlando, George Freeman and Deborah Linfield, New York City, and Bruce Sanford of Baker & Hostetler, Washington, D.C., amici curiae for The Times Publishing Co., The Miami Herald Pub. Co., Sentinel Communications Co., The Tribune Co., News and Sun Sentinel Co., *1375 Miami Daily News, Inc., News-Press Pub. Co., Pensacola News-Journal, Inc., Scripps Howard, Scripps Howard Broadcasting Company, Fernandina Beach News-Leader, Inc., Gainesville Sun Pub. Co., Lake City Reporter, Inc., Lakeland Ledger Pub. Corp., Ocala Star-Banner Corporation, Sebring News-Sun, Inc., The Leesburg Daily Commercial, Inc., The Palatka Daily News, Inc., The Sarasota Herald-Tribune Co., The Marco Island Eagle, and The Florida Star.
Richard J. Ovelmen, Miami, and Gerald B. Cope, Jr. and Laura Besvinick of Greer, Homer, Cope & Bonner, P.A., Miami, amici curiae for Representative Elaine Gordon, Roberta Fox, The Florida Press Association, and The Florida Society of Newspaper Editors.
Joel D. Eaton of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., Miami, amicus curiae for The Academy of Florida Trial Lawyers.
Janet Reno, State Atty., and Paul Mendelson, Asst. State Atty., Miami, amicus curiae.
SHAW, Justice.
We review Cape Publications, Inc. v. Hitchner, 514 So.2d 1136 (Fla. 5th DCA 1987), which upheld the constitutional validity of section 827.07, Florida Statutes (1981). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We quash in part the decision of the district court.
The issue presented by this case is whether a newspaper can be held liable under a private-facts tort theory for publishing lawfully obtained, confidential child abuse information in a story on a related child abuse trial. We conclude that under the facts here it cannot.
On December 8, 1980, respondents Hitchners were charged with aggravated child abuse by maliciously punishing a child, under section 827.03(3), Florida Statutes (1979). The trial judge directed a verdict in favor of the Hitchners at the close of the state's evidence. The following week, petitioner Maupin, a reporter employed by petitioner Cape Publications, Inc. (Cape), covered the trial for a news story. He interviewed the prosecutor, and after an unsuccessful attempt to interview the trial judge, he revisited the prosecutor's office in an effort to obtain the Hitchners' home phone number. A secretary there, acting under the prosecutor's direction, handed him the entire case file, which included a Florida Department of Health and Rehabilitative Services (HRS) predispositional report, a sheriff's case report, and a typed interview with the child by the prosecutor. The secretary made no comment concerning the file, nor were any of the file contents labeled confidential.
Maupin reviewed the file for approximately an hour and subsequently wrote an article published on February 4, 1980, in the Today newspaper, which read in part:
Couple acquitted of child abuse
A Merritt Island couple who admit scrubbing their daughter's bottom and rectum with a steel wool pad has been acquitted of child abuse.
Last week, Circuit Judge Virgil Conklin acquitted Barbara and Phillip Hitchner of charges that they "maliciously punished" their 9-year-old daughter Shawn Marie Hitchner with a S.O.S. cleaning pad.
The Hitchners, of 408 Fourth St., acknowledged that "frustration and anxiety" over their daughter's behavior led to the Nov. 23 incident in the doorway of the family bathroom.
But Conklin, confronted with acquittal or imposition of a full-blown judgment of willful child abuse, found the couple not guilty. The judge specifically did not excuse the Hitchners' actions, but noted their difficulty in dealing with the girl, whom prosecutors and defense agreed was a "problem child."
Court records show Shawn Marie's stepmother admitted scrubbing her with the pad while her natural father held her on the floor, legs spread. The Hitchners said the girl repeatedly lied, took food from the refrigerator and messed her underwear.
Color photographs show the girl's buttocks rubbed bright red, though no blood was drawn.

*1376 ... .
The girl testified in court, a scene Assistant State Attorney Glenn Craig called "a tragedy for everyone involved." She said her stepmother had her eat hot peppers in punishment for lying, and threatened to apply rubbing alcohol to the skin rubbed raw by the S.O.S. pad.
The girl also bore three burn marks credited to a cigarette and a scrape she said came from her stepmother's fingernail during the scrubbing incident. Several bruises were credited to "whippings" her mother administered with a paddle.
Ten days later, Today printed a retraction, which included the following statement:
Contrary to the implication of the printed article, there was no proof presented during the trial itself of the child ever being forced to "eat hot peppers," or of anyone burning her with cigarettes or of, "whippings" with paddles.
The child testified during the trial that she made some pretrial statements which were not true. The TODAY article was, in part, based on that information.
The Hitchners filed a four-count complaint against Maupin and Cape, alleging two counts of invasion of privacy (under theories of "private facts" and "false light") and two counts of libel. They asserted that the following facts were not brought out at trial and were obtained from confidential reports contained within the prosecutor's file:
a) "She said her stepmother had her eat hot peppers in punishment for lying and threatened to apply rubbing alcohol to the skin rubbed by the SOS pad."
b) "The girl also bore three burn marks credited to a cigarette."
c) "Several bruises were credited to `whippings' her mother administered with a paddle."
(Emphasis omitted.) In Count I, entitled Invasion of Privacy  Public Disclosure of Private Facts, the Hitchners asserted that disclosure of these facts violated section 827.07, Florida Statutes, which provides in part:
(15) CONFIDENTIALITY OF REPORTS AND RECORDS. 
(a) In order to protect the rights of the child and his parents or other persons responsible for the child's welfare, all records concerning reports of child abuse or neglect, including reports made to the abuse registry and to local offices of the department and all records generated as a result of such reports, shall be confidential and exempt from the provisions of s. 119.07(1), and shall not be disclosed except as specifically authorized by this section.
(b) Access to such records, excluding the name of the reporter which shall be released only as provided in paragraph (e), shall be granted only to the following persons, officials, and agencies for the following purposes:
1. Employees or agents of the department responsible for carrying out child protective investigations, ongoing child protective services, or licensure or approval of adoptive homes, foster homes, or other homes used for the care of children.
2. A law enforcement agency investigating a report of known or suspected child abuse or neglect.
3. The state attorney of the judicial circuit in which the child resides or in which the alleged abuse or neglect occurred.
4. Any child, parent, or perpetrator who is the subject of a report or the subject's guardian, custodian, guardian ad litem, or counsel.
5. A court, by subpoena, upon its finding that access to such records may be necessary for the determination of an issue before the court; however, such access shall be limited to in camera inspection, unless the court determines that public disclosure of the information contained therein is necessary for the resolution of an issue then pending before it.
6. A grand jury, by subpoena, upon its determination that access to such records is necessary in the conduct of its official business.

*1377 ... .
(18) PENALTIES. 
(a) Any person required by this section to report known or suspected child abuse or neglect who knowingly and willfully fails to do so, or who knowingly and willfully prevents another person from doing so, is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(b) Any person who knowingly and willfully makes public or discloses any confidential information contained in the abuse registry or in the records of any child abuse or neglect case, except as provided in this section, is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
§ 827.07, Fla. Stat. (1981).
After the parties stipulated that the facts in issue came from the child abuse reports, the trial court issued partial summary judgment on liability under Count I in favor of the Hitchners, finding that the statute was valid, that it created a private cause of action, and that the publication of records covered under the statute constituted negligence as a matter of law. The district court affirmed, ruling that the Hitchners properly alleged a cause of action under the theory of public disclosure of private facts, that the statute established the privacy of the facts, and that summary judgment was correctly issued since the stipulated facts precluded any genuine issue of material fact. The court expressly upheld the statute's constitutionality.
The Restatement (Second) of Torts defines the tort of invasion of privacy by public disclosure of private facts (private-facts tort) as follows:
§ 652D. Publicity Given to Private Life
One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
(a) would be highly offensive to a reasonable person, and
(b) is not a legitimate concern to the public.
Restatement (Second) of Torts § 652D (1977). The elements can be summarized as 1) the publication, 2) of private facts, 3) that are offensive, and 4) are not of public concern. The district court characterized the Hitchners' claim as a common law private-facts action wherein two of its elements (private facts, lack of public concern) were established as a matter of law by the statute. First, it stated that:
Section 827.07(15), Florida Statutes (1981) establishes the privacy of the facts disclosed.
Cape, 514 So.2d at 1138. And then, in response to Cape's assertion that the published matters were of public concern, it pointed out that:
As we stated before, the facts specifically alleged in the complaint ... were exempt from public disclosure and are considered private facts.
Id.
We disagree with the court's analysis and we believe that the facts here are clearly a matter of legitimate public concern. The developing law surrounding the private-facts tort recognizes that the requirement of lack of public concern is a formidable obstacle. In fact, the "news-worthiness" defense has been recognized by commentators as being so broad as to nearly swallow the tort. See, e.g., Zimmerman, Requiem for a Heavyweight: A Farewell to Warren and Brandeis's Privacy Tort, 68 Cornell L.Rev. 291 (1983). Florida courts have long recognized the restriction placed upon the general right to privacy by the public's right to know:
But the right of privacy has its limitations. Society also has its rights. The right of the general public to the dissemination of news and information must be protected and conserved. Freedom of speech and of the press must be protected... .
... .
... "The right of privacy does not prohibit the publication of matter which is of legitimate public or general interest. At some point the public interest in obtaining information becomes dominant *1378 over the individual's desire for privacy. It has been said that the truth may be spoken, written, or printed about all matters of a public nature, as well as matters of a private nature in which the public has a legitimate interest."
Cason v. Baskin, 155 Fla. 198, 215-16, 20 So.2d 243, 251 (1944) (quoting 41 Am.Jur. 935). And further:
[T]he right of privacy does not forbid the publication of information that is of public benefit, and the right does not exist as to persons and events in which the public has a rightful interest.
Harms v. Miami Daily News, Inc., 127 So.2d 715, 717 (Fla. 3d DCA 1971).
The public's right to know assumes special importance where judicial proceedings are concerned. In Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), the Court held that publication of a rape victim's name, obtained from indictments made available in open court, did not give rise to liability for invasion of privacy under private-facts theory. In denying civil liability based upon a Georgia statute that made disclosure of rape victims' names illegal, the Court pointed out that such liability runs counter to society's interest in promoting accurate media coverage of government, and particularly judicial, functions. This point is equally applicable here.
Cape's actions in publishing the complained of information can be summarized thusly: Following a child abuse trial, Cape lawfully obtained from government records additional and confidential child abuse information related to the case. It printed the information in an article on that particular trial. Its purpose in so doing was to scrutinize the judicial function. It was printing what it believed to be facts brought out at trial in an effort to hold up to the public what it considered to be a questionable judicial determination. It was not attempting to sensationalize a private nongovernment matter.
Cox speaks directly to this role of the media in such matters:
In the first place, in a society in which each individual has but limited time and resources with which to observe at first hand the operations of his government, he relies necessarily upon the press to bring to him in convenient form the facts of those operations. Great responsibility is accordingly placed upon the news media to report fully and accurately the proceedings of government... . Without the information provided by the press most of us and many of our representatives would be unable to vote intelligently or to register opinions on the administration of government generally. With respect to judicial proceedings in particular, the function of the press serves to guarantee the fairness of trials and to bring to bear the beneficial effects of public scrutiny upon the administration of justice. .. .
... .
... The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions, however, are without question events of legitimate concern to the public and consequently fall within the responsibility of the press to report the operations of government.
Id. at 491-92, 95 S.Ct. at 1044 (citation omitted; emphasis added). The importance of this role was affirmed in Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 839, 98 S.Ct. 1535, 1541, 56 L.Ed.2d 1 (1978) (quoting Sheppard v. Maxwell, 384 U.S. 333, 350, 86 S.Ct. 1507, 1515, 16 L.Ed.2d 600 (1966)):
"A responsible press has always been regarded as the handmaiden of effective judicial administration.... Its function in this regard is documented by an impressive record of service over several centuries. The press does not simply publish information about trials but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism."
A similar issue was addressed by the Court in Florida Star v. B.J.F., ___ U.S. ___, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989). There, a newspaper inadvertently published a rape victim's name in violation *1379 of section 794.03, Florida Statutes (1987), which prohibits such publication. The Court, in ruling that a judicially implied private cause of action was improperly applied against the newspaper, pointed out that criminal matters such as those involved in the instant case generally constitute matters of legitimate public concern:
It is clear, furthermore, that the news article concerned "a matter of public significance," ... in the sense in which the Daily Mail synthesis of prior cases used that term. That is, the article generally, as opposed to the specific identity contained within it, involved a matter of paramount public import: the commission, and investigation, of a violent crime which had been reported to authorities.
Florida Star, 109 S.Ct. at 2611.
We underscore the fact that the information published by Cape was lawfully obtained; it was freely given by government officials and thus was legitimately within the public domain. Florida Star addressed this point:
B.J.F.'s identity would never have come to light were it not for the erroneous, if inadvertent, inclusion by the Department of her full name in an incident report made available in a press room open to the public. Florida policy against disclosure of rape victims' identities, reflected in section 794.03, was undercut by the Department's failure to abide by this policy. Where, as here, the government has failed to police itself in disseminating information, it is clear under Cox Broadcasting, Oklahoma Publishing [v. District Court in and for Oklahoma County, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977)], and Landmark Communications that the imposition of damages against the press for its subsequent publication can hardly be said to be a narrowly tailored means of safeguarding anonymity... . Once the government has placed such information in the public domain, "reliance must rest upon the judgment of those who decide what to publish or broadcast," and hopes for restitution must rest upon the willingness of the government to compensate victims for their loss of privacy, and to protect them from the other consequences of its mishandling of the information which these victims provided in confidence.
Id. at 2611-12 (citation omitted).
Based on the foregoing, we hold narrowly that the information disclosed by Cape was of legitimate public concern. We quash that portion of the district court decision that found the petitioners liable for private-facts tort. Because this matter is decided narrowly on the above grounds, we do not reach the broad issue concerning the overall constitutionality of section 827.07. We remand for further proceedings consistent with this opinion.
It is so ordered.
OVERTON, BARKETT and KOGAN, JJ., concur.
McDONALD, J., concurs with an opinion.
GRIMES, J., concurs in result only with an opinion, in which EHRLICH, C.J., concurs.
McDONALD, Justice, concurring.
I concur with the majority opinion. The public has a legitimate concern and interest in child abuse. The Hitchners had been charged with and tried for child abuse and, therefore, had lost any claim of privacy for these acts. See Annotation, Waiver or Loss of Right of Privacy, 57 A.L.R.3d 16, § 15 (1974). Insofar as an invasion of privacy action is concerned, it matters not where the facts came from. See Pearson v. Dodd, 410 F.2d 701 (D.C. Cir.), cert. denied, 395 U.S. 947, 89 S.Ct. 2021, 23 L.Ed.2d 465 (1969).
If the defendant either knowingly or negligently published false information, the Hitchners may have a claim in libel, Miami Herald Publishing Co. v. Ane, 423 So.2d 376 (Fla. 3d DCA 1982), approved, 458 So.2d 239 (Fla. 1984), or maybe defamation, but not invasion of privacy.
GRIMES, Justice, concurring in result only.
Despite the fact that the information contained in the prosecutor's file would ordinarily *1380 be of public interest, I do believe that the statute had the effect of making the information private and not of legitimate public concern for purposes of the claim for invasion of privacy. However, because the reporter did not obtain the information illegally, I am convinced that the first amendment analysis of Florida Star v. B.J.F., ___ U.S. ___, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989), mandates reversal.
EHRLICH, C.J., concurs.