**Sally HEATH, as Guardian Ad Litem for Jane Doe, a Minor Child, Plaintiff,**

v.

**PLAYBOY ENTERPRISES, INC., a Delaware corporation, Defendant.**

No. 89–6065–CIV.

United States District Court, S.D. Florida.

Feb. 23, 1990.

**1146**

Jon E. Krupnick, Krupnick, Campbell, Malone and Roselli, Fort Lauderdale, Fla., for plaintiff.

James C. Cunningham, Jr., Frates, Bienstock & Sheehe, Miami, Fla., for defendant.

Kenneth P. Norwick, Norwick & Schad, New York City.

## MEMORANDUM ORDER

SCOTT, District Judge.

In this action, Sally Heath as the guardian ad litem for Jane Doe, a minor child, sues the publishers of *Playboy* magazine, Playboy Enterprises, Inc., ("PEI") for invasion of privacy. PEI published the child's photograph with an account of her paternity in "The Year In Sex" issue of *Playboy*. Defendant has moved for summary judgment.

## I. BACKGROUND

### A. *Facts*

The facts are not in dispute. In 1987, Tanena Love ("Love") brought a paternity action against Christopher Carson ("Carson") in the Seventeenth Judicial Circuit Court of Florida on behalf of Cristal Love Carson ("Cristal"), her minor child. Carson is the son of Johnny Carson, the late night television talk show host. The circuit court ultimately ruled in favor of Love and ordered Carson to pay $175.00 per month in child support for Cristal.

The hearings on the paternity action were open to the public and received extensive news coverage. Television crews and other members of the media appeared at the Broward County Courthouse to report on the paternity action. Newspaper and magazine accounts of the proceedings appeared regularly.[1] Love posed with Cristal for numerous media photographs, gave interviews and appeared on several television talk shows.[2]

This lawsuit arises from PEI's account of the paternity action in the March 1988, issue of *Playboy* entitled "The Year In Sex." A photograph of Love holding her daughter Cristal appeared with a brief text

---

1. The following publications reported on Love's paternity action using similar photographs prior to the March 1988, *Playboy* issue: *Jet* magazine, *Newsweek* magazine, *Orlando Sentinel, USA Today, Miami Herald, Fort Lauderdale News and Sun Sentinel, The Beacon Journal, San Jose Mercury News, Newsday, The Washington Post, San Diego Union, Chicago Tribune, Lexington Herald–Leader, New York Post, Wichita Eagle–Beacon, San Francisco Chronicle, St. Petersburg Times, The Record, Arkansas Gazette, Sacramento Bee, Seattle Times, St. Louis Post–Dispatch,* *Minneapolis Star and Tribune, Los Angeles Times, Fresno Bee, Houston Post,* and *Charlotte Observer.*

2. Love and Cristal appeared on several television shows, including the nationally televised programs "Entertainment Tonight", "Sally Jesse Raphael Show" and "Geraldo." Love and Cristal went on a year-long personal appearance tour across the United States and Canada.

recapping Love's paternity action in a section of the issue entitled "Sex Styles of the Rich and Famous." The photograph was taken on the steps of the Broward County Courthouse during one of Love's court appearances. The text next to the photograph states:

> HEEEERE'S CHRISTAL [sic]! Johnny Carson's number one son, Christopher, was ordered to pay $175 weekly in child support for year-old Christal [sic] Love Carson, his daughter by aspiring actress Tanena Love Green. Johnny's youngest boy, Cory, has also fathered an illegitimate child.

The photograph and text share the page with the "Mayflower Madam" (dressed) and face a page picturing Bebe Buell, David Bowie's former girlfriend (semi-nude).

### B. *Procedural History*

On January 3, 1989, Sally Heath, as guardian ad litem for Cristal, filed this action against PEI based on the March 1988, issue of *Playboy*.[3] The complaint alleged three counts: invasion of privacy by placing Cristal in a false light, violation of Florida Statute § 540.08 (commercial exploitation), and violation of a duty to protect minors from sexual exploitation. PEI removed this action from the Circuit Court on January 20, 1989.[4]

On February 2, 1989, PEI moved to dismiss the complaint. In response, Plaintiff amended her complaint to correct a technical defect in the pleading.[5] PEI moved to dismiss for a second time. In response, Plaintiff abandoned the second and third counts and rested solely on a recharacterized invasion of privacy claim.[6]

This Court heard arguments on the motion to dismiss on March 28, 1989. PEI argued that Florida law does not recognize a cause of action for publication of public, newsworthy facts. Plaintiff contended, however, that an issue of fact remained as to PEI's duty to recognize the antagonistic interests between the mother and her child. Accordingly, Plaintiff urged the Court to deny the motion to dismiss pending discovery.

Despite the Court's doubts as to the sufficiency of the complaint, in an abundance of caution, the Court acceded to Plaintiff's request. We gave the parties notice that the motion to dismiss would be converted into a motion for summary judgment, pursuant to Rule 12(b). At the end of discovery, Defendant filed its motion for summary judgment with a lengthy memorandum of law and supporting affidavits.[7] In response, Plaintiff filed a three-page memorandum of law. Plaintiff did not file any affidavits or rely on any other products of discovery. Moreover, Plaintiff raised no disputed issue of fact for which a trial would be necessary. With the issue in the appropriate juxtaposition, we now proceed to resolve the merits.

## II. DISCUSSION

Florida recognizes three theories of recovery under a common law invasion of privacy claim—publication of private facts, intrusion upon seclusion, and placing facts in a false light. *Cape Publications v. Hitchner*, 549 So.2d 1374 (Fla.1989); *Guin v. City of Riviera Beach*, 388 So.2d 604 (4th DCA 1980); *Jacova v. Southern Radio and Television Co.*, 83 So.2d 34 (Fla.1955).

---

**3.** Love testified in her deposition that she has acted in the best interests of the child. The circuit court in the paternity action disagreed, noting that no pecuniary or other benefits had accrued to the child as a result of the publicity. In its final judgment, entered July 29, 1987, the court appointed a guardian ad litem, Sally Heath, to represent the best interests of Cristal.

**4.** This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Florida law governs this action. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1937).

**5.** Plaintiff had named "Playboy, Inc." a nonexistent entity. Plaintiff then amended the complaint to name Playboy Enterprises, Inc., as defendant in this action.

**6.** Plaintiff abandoned paragraph 15 of the invasion of privacy count, which contained the false light allegation. The remainder of the count vaguely alleged a claim for invasion of privacy without specifying a theory of recovery.

**7.** Defendant's motion for summary judgment was accepted by this Court even though it was not timely filed.

A fourth theory of recovery, appropriation for commercial benefit, is statutory in Florida. Fla.Stat. § 540.08 (1988).

Plaintiff has failed to specify the basis for her invasion of privacy claim. Independently, the Court has identified the publication of private facts as the only theory relevant to the facts before us.[8]

## A. *Publication of Private Facts*

■ Florida has adopted the Restatement's test of invasion of privacy based on publication of private facts. *Cape Publications v. Hitchner*, 549 So.2d 1374 (Fla. 1989). Plaintiff must prove four elements:

1. the disclosure was public;
2. private facts were disclosed;
3. the matter publicized was highly offensive to a reasonable person, and
4. the matter is not a legitimate concern to the public.

*Hitchner*, 549 So.2d at 1377 (*citing* Restatement (Second) of Torts § 652D (1977)).

■ PEI contends that the photograph of Love and Cristal was taken in a public place and was therefore not a private fact. Plaintiff does not dispute that the photograph published in *Playboy* was taken in front of the Broward County Courthouse during one of Love's court appearances. A photograph taken in a public place is not private. *Oklahoma Publishing Co. v. District Court*, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977) (photograph of eleven year-old boy taken in connection with juvenile proceeding involving that child and attended by reporters was not private); *Cape Publications, Inc. v. Bridges*, 423 So.2d 426, 427 (5th DCA 1982), *review denied*, 431 So.2d 988 (1983), *cert. denied*, 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 229 (1983) (photograph of woman clutching dish towel to her body to conceal her nudity as she was escorted to police car after kidnapping was "in full public view"); *Ault v. Hustler Magazine*, 860 F.2d 877, 883 (9th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1532, 103 L.Ed.2d 837 (1989) (when a person agrees to be photographed for a newspaper, the photograph is not a private concern); *Jackson v. Playboy Enterprises, Inc.*, 574 F.Supp. 10, 11 (S.D.Ohio 1983) (photographs of three minor boys and policewoman on city sidewalk in plain view of the public eye were not "purely private activity"); Prosser, Torts, §§ 809, 811. Therefore, the photograph of Love and Cristal in the March 1988, *Playboy* issue is not a private fact as a matter of law.

Plaintiff concedes that Cristal's paternity and child support award were disclosed in public judicial records. Facts taken from public records or proceedings are not private. *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) (statute held unconstitutional where it prohibited publication of name of rape victim that became known to public through official court records dealing with trial of rapist); *Doe v. Sarasota–Bradenton Florida Television Co., Inc.*, 436 So.2d 328 (2d DCA 1983) (videotape of rape victim's testimony taken during public trial is not private); *Boyles v. Mid–Florida Television Corp.*, 431 So.2d 627, 636 (5th DCA 1983), *approved*, 467 So.2d 282 (Fla.1985) (upholding television broadcast of facts taken from HRS summary report, classified by statute as public record). Therefore, the account of Love's paternity action and child support award as published in the

---

**8.** The second category, intrusion upon seclusion, requires a trespass or intrusion upon physical solitude, as by invading one's home. *Florida Pub. Co. v. Fletcher*, 340 So.2d 914 (Fla. 1976), *reh'g denied* (Fla.1977), *cert. denied*, 431 U.S. 930, 97 S.Ct. 2634, 53 L.Ed.2d 245 (1977); *Guin v. City of Riviera Beach*, 388 So.2d 604, 606 (4th DCA 1980) (*citing* Prosser, Torts § 117 (1971)); *Thompson v. City of Jacksonville*, 130 So.2d 105 (1st DCA 1961), *cert. denied*, 147 So.2d 530 (Fla.1962); *Rawls v. Conde Nast Publications, Inc.*, 446 F.2d 313, 317 (5th Cir.1971), *cert. denied*, 404 U.S. 1038, 92 S.Ct. 712, 30 L.Ed.2d 730 (1972), *reh'g denied*, 405 U.S. 969, 92 S.Ct. 1167, 31 L.Ed.2d 244 (1972) (construing Florida law). No such intrusion has been alleged here. To the extent that the intrusion theory requires an analysis of public and private facts or locations, this theory is disposed of by our analysis under the first theory of recovery, the publication of private facts.

Plaintiff abandoned her claims under the third and fourth theories of recovery, placing plaintiff in a false light and appropriation for commercial benefit, in response to PEI's motion to dismiss.

March 1988, issue of *Playboy* included no private facts as a matter of law.

■ Plaintiff further concedes that the Carson paternity action generated extensive publicity of Love and Cristal long before the March, 1988, *Playboy* publication. At least twenty-seven magazines and newspapers published the story in some version. Personal appearances by Love and Cristal brought the story to audiences of local and national radio and television programs. Republication of facts already publicized elsewhere cannot provide a basis for an invasion of privacy claim.[9] *Valentine v. C.B.S., Inc.*, 698 F.2d 430, 433 (11th Cir. 1983) (song lyrics did not disclose private facts but merely detailed events previously disclosed through public trial testimony); *Faloona v. Fredrickson v. Hustler Magazine, Inc.*, 799 F.2d 1000, 1006 (5th Cir. 1986), *reh'g denied*, 802 F.2d 455 (5th Cir. 1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987) (since photographs printed in *Hustler* magazine had already been widely published elsewhere, *Hustler* revealed no private facts); *Jackson*, 574 F.Supp. at 11 (*citing* Restatement (Second) of Torts, § 625D, Comment b); Prosser & Keaton, The Law of Torts, § 117 (5th Ed.1984). The prior publication of all facts published in the March 1988, issue of *Playboy* further evidences their public nature. Republication of these facts cannot be actionable as an invasion of privacy as a matter of law.

PEI further contends that it purchased the photograph from a commercial photographer in New York and did not secure a release because the photograph was taken in public. The law supports the view that even otherwise private facts may become public when acquired by legitimate means. *Cape Publications v. Hitchner*, 549 So.2d 1374, 1378 (Fla.1989) (case file was obtained legitimately from prosecutor's secretary, who gave no caution as to confidentiality); *Smith v. The Daily Mail Publishing Co.*, 443 U.S. 97, 103, 99 S.Ct. 2667, 2671, 61 L.Ed.2d 399 (1979) (newspapers legitimately learned of identity of juvenile offender by monitoring police band radio frequency and interviewing witnesses and police); *The Florida Star v. B.J.F.*, 491 U.S. ——, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989) (newspaper legitimately learned identity of rape victim from police reports).

Based on this undisputed record, the Court concludes that the facts published in the March 1988, *Playboy* article were not private. The photograph was taken in a public place. The text contained facts from public judicial records. All facts had been made public prior to the *Playboy* article. All information was obtained by legitimate means. Therefore, plaintiff has failed to state a claim for invasion of privacy based on the theory of publication of private facts. Because we find that no private facts were disclosed, we need not reach the other elements of the claim.

### B. *The Child as Involuntary Participant*

■ Plaintiff urges that PEI should not have published the photograph without the child's consent, and that the child was an involuntary participant in the mother's quest for publicity. Plaintiff claims that the guardian ad litem would have objected to the PEI publication. It is undisputed that PEI made no effort to secure the child's consent.

Plaintiff also argues that the republication of public facts in an untimely manner is not protected because it is not newsworthy. The relevance of newsworthiness to an invasion of privacy claim is generally an issue of content rather than timeliness. *See e.g., Cape Publications v. Bridges*, 423 So.2d 426, 427 (5th DCA 1982), *review denied*, 431 So.2d 988 (1983), *cert. denied*, 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 229 (1983). Moreover, the judgment of what is newsworthy is primarily a function of the publisher, not the courts. *Doe*, 436 So.2d at 331.

**9.** Plaintiff argues that republication of the photograph in the "damaging context" of *Playboy* magazine has "stigmatized" the child. An invasion of privacy focuses on the *matter* being published, not its *context* or *inferences*. Restatement (Second) of Torts § 652D (1977). *See Ault v. Hustler Magazine, Inc.*, 860 F.2d 877, 882 (9th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1532, 103 L.Ed.2d 837 (1989) (publication of truthful information, even in a pornographic magazine, has been held to be a statement of opinion protected by the first amendment and not supportive of a defamation claim).

In essence, Plaintiff suggests that the child cannot consent to publicity either through her mother's actions or through disclosure of public judicial records. However, consent is irrelevant to the privileged publication of public facts. *Valentine v. C.B.S., Inc.*, 698 F.2d 430, 433 (11th Cir. 1983) (construing Florida law) (plaintiff as involuntary witness to murder need not consent to inclusion in song depicting events); *Jacova v. Southern Radio and Television Co.*, 83 So.2d 34, 40 (Fla.1955) (innocent bystander photographed at scene of gambling raid has no cause of action as an involuntary participant); *Stafford v. Hayes*, 327 So.2d 871, 872 (1st DCA 1976), *cert. denied*, 336 So.2d 604 (Fla.1976) (plaintiff photographed in hotel bar after evacuation of state buildings because of bomb threat need not consent to being televised); Restatement (Second) of Torts, § 652D, Comment F (1977).

■ Consent is only relevant to the publication of private facts tort where a genuine issue exists as to either (1) the plaintiff's status as a public figure or (2) the legitimacy of public concern (the fourth element under the private facts theory). *See e.g., Harms v. Miami Daily News, Inc.*, 127 So.2d 715, 718 (3d DCA 1961); *Stafford*, 327 So.2d at 872; *Jacova*, 83 So.2d at 37; *Valentine*, 698 So.2d at 433. Even with this exception, however, consent is never reached where no disclosure of private facts can be demonstrated. Plaintiff's novel argument must therefore fail. Because consent is not an issue in this case, we reject Plaintiff's contention that the child's guardian ad litem should have

been consulted prior to the March, 1988, *Playboy* issue.

C. *Child Exploitation as a State Interest*

Plaintiff argues that the publication of truthful information may be actionable where there is a need to further a state interest in protecting a child from exploitation. Plaintiff cites *The Florida Star*, 491 U.S. ——, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989) and *Smith v. The Daily Mail Publishing Co.*, 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979) for this proposition. However, both of these cases *upheld* the publication of lawfully obtained, truthful information despite state statutes restricting the release of this information. Moreover, these cases did not hold, as Plaintiff implies, that a private individual could assert a state interest in the absence of a relevant statute. Here, no Florida statute prohibits the publication of a photograph taken in a public place or of facts taken from public records.[10] Nor was PEI on notice, by statute or otherwise, that the republication of public facts regarding paternity or child support was proscribed in any way. *Compare Patterson v. Tribune Co.*, 146 So.2d 623 (1st DCA 1962), *cert. denied*, 153 So.2d 306 (Fla.1963) (creating private right of action for violation of Florida Statutes § 398.18(1)).

Florida has codified a narrow range of state interests in the area of child exploitation.[11] Plaintiff's claim is not among these or any other statutory interests, as Plaintiff herself has acknowledged.[12] Although PEI's actions may have been questionable,

---

**10.** In fact, we doubt that Florida could pass such a statute, as it would raise grave constitutional concerns. *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975); *Oklahoma Publishing Co. v. District Court*, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977). Fortunately, although PEI has raised this issue by way of defense, we need not reach the issue in light of our disposition on tort grounds.

**11.** Sexual exploitation of a minor through the use of child pornography by the media is prohibited by Florida Statute § 827.071 (1990). *See Griffin v. State*, 396 So.2d 152 (Fla.1981) (up-

holding constitutionality of former Florida Statute § 847.014). Sexual exploitation of persons under age 16 for commercial purposes, including prostitution, is made a second degree felony by Florida Statute § 796.03 (1990). Exploitation of a child's rights to confidentiality concerning reports of child abuse and neglect is prohibited by Florida Statute § 415.502 (1990).

**12.** Early in this lawsuit, Plaintiff abandoned her argument that PEI had violated "a duty to protect minors from sexual exploitation." Moreover, plaintiff abandoned her claim under Florida Statutes § 540.08, which requires written consent for use of photographs for advertising or other commercial purposes.

issues of good taste and editorial judgment are for the media and not for the courts. The Court must follow the law, despite our natural sympathies for the Plaintiff's child. There is simply no legal remedy available for her, and no private right of action can be created from the circumstances that Plaintiff presents.

### III. CONCLUSION

Based on the foregoing analysis, it is hereby ORDERED as follows:

1. PEI's motion for summary judgment is GRANTED. The Court will enter final judgment for PEI by separate order.

2. The Court has grave concerns about the actions of the Plaintiff and her counsel, and in particular Plaintiff's request to convert PEI's motion to dismiss into a motion for summary judgment. At the hearing on the motion to dismiss, Plaintiff's counsel insisted that the issue of the child's consent to publication precluded dismissal under Rule 12(b)(6) and required resolution on summary judgment. However, the Court's research and analysis has shown that consent is irrelevant as a matter of law. Moreover, even with the benefit of an extended discovery phase, Plaintiff failed to substantiate her position. Instead, Plaintiff merely filed a three-page memorandum of law, even though she bears the burden of proof on her claim.

The Court is deeply concerned about the initial merit of the complaint and the representations of the Plaintiff which extended this case through the summary judgment stage. Accordingly, it is hereby ORDERED that Plaintiff shall have ten (10) days to show cause as to why sanctions should not be imposed pursuant to Federal Rules of Civil Procedure 11 and the inherent powers of the Court, *Roadway Express Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

DONE and ORDERED.