Mr. Bruce R. Conroy City Attorney City of Cape Coral Post Office Box 150027 Cape Coral, Florida 33915-0027
Dear Mr. Conroy:
You ask substantially the following question:
 Are the police arrest reports of persons charged with criminal child abuse subject to the confidentiality provisions of ss. 415.107 and 415.51, F.S. (1992 Supp.)?
In sum:
 In light of certain statutory provisions discussed below and in accordance with the mandate that exemptions from Ch. 119, F.S., be strictly construed, I am of the opinion that ss. 415.107 and 415.51, F.S. (1992 Supp.), apply to HRS's records and do not encompass a law enforcement agency's arrest report.
According to your letter, the Police Department of the City of Cape Coral has been involved in the investigation of reports of child and elderly abuse and has made arrests of persons suspected of perpetrating such abuse. The police department has been releasing its records relating to its investigation after excising information which would reveal the identity of the victim pursuant to s. 119.07(3)(h), F.S.(1992 Supp.), or which constitutes criminal investigative or criminal intelligence information pursuant to s. 119.011(3) , F.S.
It is a general policy of this state, as expressed in the Public Records Law, Ch. 119, F.S., and now reflected in our State Constitution, that all state, county, and municipal records be open for inspection by any person.[1] Only those public records which are provided by law to be confidential or which are prohibited from being inspected by the public, whether by general or special law, are exempt from the disclosure requirements of s.119.07(1), F.S. (1992 Supp.).[2] Moreover, while the Public Records Law is to be liberally construed in favor of open government, exemptions from disclosure are to be narrowly construed and limited to their stated purpose.[3]
Sections 415.502-415.514, F.S., seek "to provide for comprehensive protective services for abused or neglected children found in the state by requiring that reports of each abused or neglected child be made to [HRS] in an effort to prevent further harm to the child or any other children living in the home . . . ."[4] "Child abuse or neglect" as used in ss. 415.502-415.514, F.S., means "harm or threatened harm to a child's physical or mental health or welfare by the acts or omissions of a parent, adult household member, or other person responsible for the child's welfare, or, for purposes of reporting requirement, by any person."[5]
Section 415.504(1), F.S., requires:
(1) Any person, including, but not limited to, any:
* * *
 (f) Law enforcement officer, who knows, or has reasonable cause to suspect, that a child is an abused or neglected child shall report such knowledge or suspicion to [HRS]. Reports of known or suspected child abuse or neglect are to be made immediately to HRS's central abuse and tracking registry on the statewide toll-free telephone number. Reports made by a person whose occupation is enumerated in s. 415.504(1), F.S., are required to be confirmed in writing to the local HRS office within 48 hours of the initial report.[6] Section 415.505(1)(a), F.S., requires that HRS be capable of receiving and investigating reports of known or suspected child abuse or neglect 24 hours a day,[7] days a week. The department may notify the state attorney and the appropriate law enforcement agency of any child abuse or neglect case in which a criminal investigation is deemed appropriate by HRS.[8] If requested by a state attorney or law enforcement agency, HRS is required to furnish all investigative reports to those agencies.[9]
The department, however, is required to immediately notify the state attorney and the appropriate law enforcement agency in cases where an observable or medically diagnosed internal injury is a result of abuse or neglect or where the child has died as a result of abuse or neglect or is the victim of aggravated child abuse or sexual battery or sexual abuse.[10] Upon receiving such notification, the law enforcement agency may conduct a criminal investigation which shall be coordinated, whenever possible, with HRS's child protection investigation. When, however, the law enforcement agency and HRS have conducted independent investigations, as soon as possible after concluding its investigation, the law enforcement agency shall report its findings to HRS. Section 415.51(1)(a), F.S. (1992 Supp.), provides:
In order to protect the rights of the child and his parents or other persons responsible for the child's welfare, all records concerning reports of child abuse or neglect, including reports made to the central abuse registry and tracking system and all records generated as a result of such reports, shall be confidential and exempt from the provisions of s. 119.07(1) and shall not be disclosed except as specifically authorized by ss. 415.502-415.514. Such exemption from s. 119.07(1) applies to information in the possession of those entities granted access as set forth in this section.
Access to such records, with the name of the reporter excluded,[11] "shall depend upon the classification of the report" and shall only be granted to the persons, officials, and agencies specified in the statute.[12] Chapter 415, F.S., thus, provides for the reporting of child abuse or neglect to, and the investigation of such reports by, HRS. Section 415.51, F.S. (1992 Supp.), in providing for the confidentiality of child abuse reports and records, authorizes the limited disclosure of such records based upon the classification of the report. Since HRS is responsible for classifying the report,[13] it appears that the reports of abuse or neglect referred to in s. 415.51, F.S. (1992 Supp.), are those reports of child abuse or neglect made to HRS.[14] Such reports to HRS are confidential and exempt pursuant to s. 415.51, F.S. (1992 Supp.), as are records generated as a result of HRS's investigation.
As noted above, the purpose of ss. 415.502-415.514, F.S., is the protection of abused or neglected children by seeking to prevent further harm to the child or other children living in the home. The purpose of the criminal sanctions for child abuse imposed by Ch. 827, F.S., however, is somewhat different. It seeks to punish a wrong not only against the child but the public at large.[15]
The Legislature has enacted statutes which specifically address law enforcement records relating to child abuse.
For example, s. 119.07(3)(h), F.S. (1992 Supp.), provides:
 Any criminal intelligence information or criminal investigative information including the photograph, name, address, or other fact or information which reveals the identity of the victim of the crime of sexual battery as defined in chapter 794; the identity of the victim of the crime of lewd, lascivious, or indecent assault upon or in the presence of a child, as defined in chapter 800; or the identity of the victim of the crime of child abuse as defined by chapter 827 and any criminal intelligence information or criminal investigative information or other criminal record, including those portions of court records, which may reveal the identity of a person who is a victim of any sexual offense, ncluding a sexual offense proscribed in chapter 794, chapter 800, or chapter 827, is exempt from [disclosure]. (e.s.)
Statutes relating to the same subject and having the same purpose should be construed together.[16] Courts, therefore, will construe statutes which relate to the same subject in pari materia and will view the entire statutory scheme to determine legislative intent.[17] If s. 415.51, F.S. (1992 Supp.), is read so as to make all law enforcement records relating to a child abuse investigation confidential and exempt from disclosure, the provision quoted above exempting the identity of a victim of the crime of child abuse, as defined in chapter 827, F.S., would be unnecessary.[18]
Moreover, in 1991, the Florida Legislature amended ss. 119.07, 119.107 (aged or disabled adult abuse records) and 119.51, F.S., (child abuse records) to prohibit the release of abuse, neglect, and exploitation reports that were the subject of an active criminal investigation, unlessthe State Attorney of the judicial circuit in which the child resides or in which the alleged abuse, neglect or exploitation occurred specifically authorized the release of such reports.[19] In 1992, the Legislature repealed the above provisions.[20] The staff analysis for the 1992 legislation states that the effect of the proposed change would be that the "reports [of abuse, neglect and exploitation that are the subject of an active criminal investigation] would no longer be exempt from the public records law and would once again be available to the public."[21]
In addition, s. 119.07(7), F.S. (1992 Supp.), provides a procedure whereby any person or organization may petition the court for an order making public those records of HRS that pertain to investigations of alleged adult or child abuse, neglect, abandonment, or exploitation. The court is required to employ a balancing test to determine whether good cause exists for public access to the records sought.[22] In cases involving the death of an aged person or disabled adult or a child, there is a presumption that the best interests of such person and the public interest would be served by full public disclosure of the circumstances of the investigation.[23]
The above procedure, however, relates only to HRS records. Thus, the records of a law enforcement agency which is independently conducting a criminal investigation are included within the provisions of s. 415.51, F.S. (1992 Supp.), there would be no procedure, as there is for HRS records, for the release of such records.
In light of the above, I cannot conclude that s. 415.51, F.S. (1992 Supp.), applies to any and all records of child abuse received or created by a governmental entity other than HRS. In order to give effect not only to s. 415.51 but also to the provisions of s. 119.07(3)(h), F.S. (1992 Supp.), s. 415.51, F.S. (1992 Supp.), must be read to apply to reports of abuse made to HRS and its records generated as a result of its investigation. Records generated by a law enforcement agency conducting a separate criminal investigation of child abuse would be subject to s. 119.07(3)(h), F.S. (1992 Supp.). If, however, HRS releases records to a law enforcement agency, such HRS records held by the law enforcement agency would be exempt from disclosure.[24] In addition, information generated by a law enforcement agency in performing its duties pursuant to certain provisions of Ch. 39, F.S., relating to dependency and protective custody would be governed by the confidentiality provisions contained in that chapter.[25] The provisions of Ch. 415, F.S., relating to abuse, neglect or exploitation of aged persons or disabled adults are, in many respects similar to those contained in Ch. 415, F.S., relating to child abuse or neglect. Section 415.101, F.S., provides that it is the intent of the Legislature to provide for the detection and correction of abuse, neglect, and exploitation of aged person and disabled adults through social services and criminal investigations and to establish a program of protective services for all aged persons or disabled adults in need of them. Reports of abuse, neglect, or exploitation of an aged person or disabled adult are to be made to HRS.[26]
Section 415.107, F.S. (1992 Supp.), provides that all records concerning reports of abuse, neglect, or exploitation of aged persons or disabled adults and all records generated as a result of such reports are confidential and exempt from s. 119.07(1), F.S. (1992 Supp.) The statute, however, like s. 415.51, F.S. (1992 Supp.), authorizes access to such records depending upon the classification of the report. As with child abuse or neglect records, HRS is responsible for classifying such reports,[27] and, thus, the reports referred to in s. 415.107, F.S. (1992 Supp.), would appear to refer to reports of HRS.
While there is no counterpart to s. 119.07(3)(h), F.S. (1992 Supp.), which would require the redaction of information revealing the identity of the aged person or disabled adult who is the subject of abuse, neglect or exploitation, in light of the similarity in language used in providing for the confidentiality of these records and in other provisions in Ch. 415, I am of the opinion that ss. 415.107 and 415.51, F.S. (1992 Supp.), should be read in a similar manner. While this matter is not free from doubt,[28] I am of the opinion that in light of the above statutory provisions discussed above and in accordance with the mandate that exemptions from Ch. 119, F.S., be strictly construed, ss. 415.107 and 415.51, F.S. (1992 Supp.), apply to HRS's records and would not encompass a law enforcement agency's records generated while conducting a separate criminal investigation except to the extent that such records contain information received from HRS.[29] Accordingly, I am of the opinion that the law enforcement agency's arrest records of individuals charged with child abuse or neglect or the abuse, neglect or exploitation of aged persons or disabled adults are not encompassed by the provisions of ss. 415.107 and 415.51, F.S. (1992 Supp.).
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, s. 119.01(1), F.S., and s. 24, Art. I, State Const. And see, s. 119.07(1)(a), F.S. (1992 Supp.), providing for the disclosure of public records.
[2] Section 119.07(3)(a), F.S. (1992 Supp.).
[3] See, Seminole County v. Wood, 512 So.2d 1000 (5 D.C.A. Fla., 1987), petition for review denied, 520 So.2d 586 (Fla. 1988); Tribune Company v. Public Records, 493 So.2d 480 (2 D.C.A. Fla., 1986), petition for review denied sub nom., Gillum v. Tribune Company, 503 So.2d 327 (Fla. 1987).
[4] Section 415.502, F.S., setting forth the legislative intent.
[5] Compare, s. 827.04, F.S., defining "child abuse" for purposes of Ch. 827, F.S.
[6] Section 415.504(2)(a), F.S. Upon receiving such report, the central abuse registry and tracking system is required to determine if the report requires an immediate onsite protective investigation.
[7] Section 415.504(2)(b), F.S.
[8] Section 415.505(3), F.S.
[9] Section 415.505(1)(a), F.S.
[10] Sections 415.505(1)(h) and (i), F.S.
[11] Section 415.51(10), F.S. (1992 Supp.), sets forth when the name of the reporter may be disclosed.
[12] Section 415.51(2)(b), F.S. (1992 Supp.). Among those authorized to receive such records is "[a] law enforcement agency investigating a report of known or suspected child abuse or neglect.
[13] See, e.g., ss. 415.504(4) 2. and 415.505(1)(g), F.S.
[14] Cf., AGO 90-101, stating that s. 415.51(1)(b), F.S., which opens all records involving the death of a child as a result of abuse or neglect which are classified in an investigative report as confirmed pursuant to s. 415.504, F.S., within 10 days after completion of the investigation, refers to reports in HRS's investigative records since HRS is responsible for classifying reports pursuant to s. 415.504, F.S.
[15] Cf., Shaw v. Fletcher, 188 So. 135 (Fla. 1939) (a crime is an offense against the public pursued by the sovereign). See generally, 22 C.J.S. Criminal Law s. 3 (a wrong directly or indirectly affecting the public; a violation of, or neglect to perform a legal duty of such importance to the protection of society that the state takes notice thereof and imposes a penalty or punishment for such violation or neglect, or an act or omission which is prohibited by law as injurious to the public and is punished by the state in a proceeding in its own name or in the name of the people or the sovereign).
[16] See, Scates v. State, 603 So.2d 504 (Fla. 1992); V.C.F. v. State, 569 So.2d 1364 (1 D.C.A. Fla., 1990).
[17] See, e.g., Ferguson v. State, 377 So.2d 709 (Fla. 1979).
[18] See, Sharer v. Hotel Corporation of America, 144 So.2d 813,817 (Fla. 1962) (It should never be presumed that the legislature intended to enact purposeless and therefore useless, legislation. Legislators are not children who build block playhouses for the purpose, and the gleeful anticipation, of knocking them down).
[19] See, ss. 119.07(7)(d), 415.107(3), and 415.51(3), F.S. 1991.
[20] See, s. 43, Ch. 92-58, Laws of Florida.
[21] See, House of Representatives, Committee on Health and Rehabilitative Services, Final Bill Analysis Economic Impact Statement on CS/HB 2379 (enacted as Ch. 92-58, Laws of Florida), dated March 25, 1992. And see, Senate Staff Analysis and Economic Impact Statement on SB 1786, dated March 15, 1993, which discusses the effect of SB 1786 which was introduced, but did not pass, the 1993 Legislature; the bill sought, among other things to exempt court records, including testimony from witness, that revealed a photograph, likeness, name, address or other identifying information of, among others, child abuse victims. In discussing the current law, the summary states:
Currently, any criminal intelligence information or criminal investigative information which reveals the identity of a victim of . . . child abuse, is confidential under s. 119.07(3)(h), F.S.(Supp. 1992). In addition, any criminal intelligence information or criminal investigative information or other criminal record, including those portions of court records, which may reveal identifying information about such victims, is also exempted from the public records laws under this section.
[22] Section 119.07(7)(a), F.S. (1992 Supp.), provides that the court shall balance the best interest of the adult or child who is the focus of the investigation, and in the case of the child, the interests of the child's siblings, together with the privacy right of other persons identified in the reports against the public interest.
[23] Section 119.07(7)(b), F.S. (1992 Supp.).
[24] Section 415.51(1)(a), F.S. (1992 Supp.), stating that the exemption from s. 119.07(1), F.S., contained therein for child abuse and neglect reports and records "applies to information in the possession of those entities granted access as set forth in this section."
[25] See, s. 415.506, F.S. (1992 Supp.), which authorizes a law enforcement agency to take a child into protective custody as provided in Ch. 39, F.S. And see, s. 39.411(4), F.S., which provides that all information obtained in carrying out their duties under Part III, Ch. 39, F.S., relating to dependent children, by any judge, employee of the court, authorized agent of HRS, correctional probation officer, or law enforcement officer shall be confidential and exempt from the provisions of s.119.07(1) and shall not be disclosed to anyone except as provided therein. See also, s. 39.443(4), F.S., which provides a similar exemption for information obtained pursuant to Part IV, Ch. 39, F.S., relating to families and children in need of services.
[26] See, s. 415.103, F.S.
[27] See, s. 415.104(2), F.S.
[28] Cf., Cape Publications, Inc. v. Hitchner, 514 So.2d 1136 (5 D.C.A. Fla., 1987), quashed in part, 549 So.2d 1374 (Fla. 1989), in which the court observed that the HRS dispositional report, sheriff's case report and a typed interview between the state attorney between the child and an assistant state attorney were generated as a result of a report of child abuse or neglect and were under s. 827.07(15), F.S. (1981) (now s. 415.51, F.S.) exempt from disclosure.
[29] The Supreme Court of Florida recently accepted a certified question from the Second District Court of Appeal in A.J. v. Times Publishing Company, as to whether a noncustodian who is the subject of a public record has standing to compel a custodian to assert a statutory exemption. One of the issues raised in the district court was whether the confidentiality provisions of s. 415.51, F.S., applied to a report of the sheriff's department concerning allegations of child abuse. The district court declined to address them and stated that the issue may property be presented to the trial court on remand.