# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 14, 2009          Decided June 30, 2009

No. 08-5225

HORNBECK OFFSHORE TRANSPORTATION, LLC,
APPELLANT

v.

UNITED STATES OF AMERICA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-01030-RCL)

*Gene C. Schaerr* argued the cause for appellant. With him on the briefs were *Lawrence I. Kiern*, *Thomas L. Mills*, and *Gerald A. Morrissey III.*

*Sydney A. Foster*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *Gregory G. Katsas*, Assistant Attorney General, *Jeffrey A. Taylor*, U.S. Attorney, and *Mark B. Stern*, Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: SENTELLE, *Chief Judge*, and ROGERS and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

Opinion filed by *Circuit Judge* ROGERS, concurring in part.

BROWN, *Circuit Judge*: Hornbeck Offshore Transportation, LLC owns and operates oil transport vessels, including the ENERGY 8701, a single-hulled oil barge. All single-hulled oil barges have been slated to be phased out under the Oil Pollution Act of 1990 ("OPA"), but the actual phase-out date depends on a vessel's gross tonnage. 46 U.S.C. § 3703a(c). The U.S. Coast Guard initially assigned a phase-out date which Hornbeck believed was too early. After successfully challenging the Coast Guard's initial determination under the Administrative Procedure Act ("APA"), Hornbeck filed a tort suit under the Federal Tort Claims Act ("FTCA"), seeking recovery of $6,578,789.65 for the alleged damages caused by the mis-assignment. Because Hornbeck's common law allegations have no local law analog, we reject his FTCA claims and affirm the district court's dismissal.

## I. Background

After the Exxon Valdez oil spill, Congress passed the OPA, requiring all newly constructed barges to be double-hulled to reduce the risk of similar accidents. 46 U.S.C. § 3703a(a). Single-hulled oil vessels that predated the act — such as the ENERGY 8701 — were subject to statutory phase-out dates based on gross tonnage: as relevant here, if the gross tonnage of the barge was 5,000 gross tons or more, it had to be phased out by January 1, 2005, *id.* § 3703a(c)(3)(A)(vii); if the gross tonnage of the barge was less than 5,000 gross tons, it had to be phased out by January 1, 2015, *id.* § 3703a(c)(2).

There are two methods of determining the gross tonnage of a barge: the regulatory system and the convention system. *See id.* § 3703a(e)(1). In 1976, the ENERGY 8701's regulatory system measurement was 5,323 tons. In 2004, the convention

system measurement was 4,660 tons. Hornbeck requested a 2015 phase-out date based on the lighter measurement. The Coast Guard denied the request and assigned a 2005 phase-out date. *See Hornbeck Offshore Transp., LLC v. U.S. Coast Guard*, 424 F. Supp. 2d 37, 39–43 (D.D.C. 2006) (discussing in detail the statutory framework, the measurement systems, and the Coast Guard's decision).

In 2004, Hornbeck filed an APA suit challenging the assigned date and, while the suit was still pending, took its barge out of service. *See id.* at 38. After the district court interpreted the statutory language to require the later phase-out date, *id.* at 58, the Coast Guard changed ENERGY 8701's phase-out date to 2015, and Hornbeck placed the barge back into service.

In 2007, Hornbeck filed a lawsuit under the FTCA, for both negligent and intentional torts, seeking consequential damages for the lost profits while its barge was out of service. *See Hornbeck Offshore Transp., LLC v. United States*, 563 F. Supp. 2d 205, 209 (D.D.C. 2008). Hornbeck claims it lost over six-and-a-half million dollars in potential profits as a result of "the Coast Guard's lack of due care, negligence, [and wrongful acts] in assigning an improper OPA[] phase-out date for the Barge." Compl. ¶¶ 6, 39. The district court granted the government's motion to dismiss the FTCA suit for lack of subject-matter jurisdiction, holding that the United States has sovereign immunity because there is no local private analog to Hornbeck's claim. 563 F. Supp. 2d at 217.

## II. Discussion

The FTCA waives sovereign immunity "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §

1346(b)(1). This statutory text does not create a cause of action against the United States; it allows the United States to be liable if a private party would be liable under similar circumstances in the relevant jurisdiction. We look to the law of the local jurisdiction — in this case, the District of Columbia — to determine whether there is a local private party analog to Hornbeck's claims. We conclude there is none. Hornbeck identifies no duty that would give rise to liability under District of Columbia law; its claims arise purely out of a federal statutory scheme that has no local analog. Although Hornbeck casts its complaint in common law tropes — negligence and intentional trespass — neither action can sustain its claim, as neither action is analogous to the federal legal duty that was violated.

## A. Federal Law

Violations of federal law — when not accompanied by any local law violation — cannot support a suit under the FTCA. *Art Metal-USA, Inc. v. United States*, 753 F.2d 1151, 1157 (D.C. Cir. 1985). The Supreme Court has "consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State — the source of substantive liability under the FTCA." *FDIC v. Meyer*, 510 U.S. 471, 478 (1994). In *Meyer*, the Court rejected the applicability of the FTCA to a tort based on a constitutional violation, holding that "federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right." *Id.* The same is true in this case.

Although Hornbeck attempts to bring its claims under D.C. tort law, the violation flows only from a federal statute specifying phase-out dates for barges — 46 U.S.C. § 3703a(c)(2) — which permits single-hulled barges under 5,000 gross tons to continue to operate until 2015. According to

Hornbeck's own complaint, its negligence suit is based entirely on the Coast Guard's "assigning an improper phase-out date and failing to assign the proper phase-out date for the ENERGY 8701." Compl. ¶ 39. This error — again, according to Hornbeck's own complaint — is what "caused injuries and damages in the amount of $6,578,789.65." *Id.* As the very allegations make clear, the only alleged error in this case was the Coast Guard's failure to follow *federal* law. No local law imposes tort liability for bungling the phase-out date for Hornbeck's barge.

Absent the federal law phase-out requirement, Hornbeck could not possibly have a claim for damages. Without the OPA provision, Hornbeck admits — as it must — that it does not have any claim for injury. Oral Arg. Recording at 2:14–19 ("If they had applied the statute [46 U.S.C. § 3703a(c)] correctly, that's true, we wouldn't have a lawsuit."). Clearly, then, the only basis for Hornbeck's claim is a federal statute, not any state or local law. Although the FTCA can apply where a federal statute "provide[s] the standard of care against which the government's conduct should be assessed," *Art Metal*, 753 F.2d at 1159, nothing in the federal phase-out provision suggests the creation of a standard of care to be applied under local law. Nor does the statute indicate that "the government has assumed duties under local tort law." *Id.* at 1159 n. 15.

In *Art Metal*, we affirmed dismissal for a negligence suit brought against the United States for failure to follow federal regulations and due process requirements. 753 F.2d at 1152. In a holding directly applicable here, *Art Metal* explained that "by basing its negligence claim entirely on violations of *federal* duties, [the plaintiff] fails to consider that the FTCA waives the immunity of the United States only to the extent that a private person in like circumstances could be found liable in tort under *local* law." *Id.* at 1157 (emphasis added). It is well-established

that "the violation of a federal statute or regulation by government officials does not of itself create a cause of action under the FTCA." *Id.*

Hornbeck attempts to circumnavigate the local law requirement by arguing that there is a "general duty of one who undertakes an action . . . to act with due care." Appellant Br. at 26. Although we do not doubt that this extremely generalized standard of due care may be part of D.C.'s common law of negligence, citation to the generic duty "to act with due care" while undertaking an action does not help Hornbeck in this case. "The FTCA's local law requirement may not be circumvented merely by casting the alleged constitutional wrong as negligence." *Art Metal*, 753 F.2d at 1160. Similar reasoning applies here, where Hornbeck has merely re-labeled a violation of a federal statute as common law claims. We agree with the reasoning of several of our sister circuits, which have noted that "[i]t is virtually axiomatic that the FTCA does not apply where the claimed negligence arises out of the failure of the United States to carry out a [federal] statutory duty in the conduct of its own affairs." *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 536 (1st Cir. 1997) (second alteration in original); *see also United States v. Agronics*, 164 F.3d 1343, 1345 (10th Cir. 1999); *Johnson v. Sawyer*, 47 F.3d 716, 728 (5th Cir. 1995) (en banc) ("[T]he FTCA . . . is unavailable where [t]he existence or nonexistence of the claim depends entirely upon Federal Statutes." (second alteration in original)).

To say the violation of a federal statute cannot be the sole basis of an FTCA claim is not to say the claim must exist entirely independently of any federal provision. It means the claim must at least be supported by analogous local law — i.e., a private person guilty of similar malfeasance would be liable under local law. In other words, an FTCA claim is not necessarily barred if it is partially related to a federal statute,

because the ultimate inquiry is always whether there is a proper local analog. *Art Metal*, 753 F.2d at 1158. But where a claim is "wholly grounded on a duty" created by a federal statute such that there is no local law that could support liability of a private party for similar actions, the FTCA does not apply. *Johnson*, 47 F.3d at 729.

Despite Hornbeck's heavy reliance on *Indian Towing Co. v. United States*, 350 U.S. 61 (1955), that case is distinguishable. In *Indian Towing*, the Supreme Court held the United States could be liable under the FTCA for its negligent operation of a lighthouse where the Coast Guard allegedly allowed a light bulb to go out and negligently failed to check the bulb for about a month. *Id.* at 62. The Court held such acts of negligence could create liability under local law, because a private person who failed to check a light bulb for a month could be found negligent. Unlike in *Indian Towing* — where the negligence of the act did not depend on violation of any federal statute, but on basic principles of negligence — the violation in this case only exists because of the federal statute's specification of the phase-out date. Local negligence law could not conceivably be read to create liability for an action such as assigning a phase-out date in 2015 rather than 2005.

This Court in *Art Metal* was careful to distinguish between a federal statute which merely creates "federal legal duties" and one which suggests "that the government has assumed duties under local tort law." 753 F.2d at 1159 n.15. As in *Art Metal*, the phase-out statute in this case does not suggest any assumption of local tort law duties. Rather, it simply creates a "federal legal duty" to assign a phase-out date in 2015, which *Art Metal* explicitly held not actionable under the FTCA. To make the point more clearly: Would there still be a local cause of action without the federal statute? The answer is clearly "no." If there is no local law under which "a private person[]

would be liable to the claimant in accordance with the law of the place where the act or omission occurred," sovereign immunity has not been waived. 28 U.S.C. § 1346(b)(1).

## B. Local Law

As this court made clear in *Art Metal*, "[d]uties set forth in *federal law* do not, therefore, automatically create duties cognizable under *local tort law*. The pertinent inquiry is whether the duties set forth in the federal law are analogous to those imposed under local tort law." 753 F.2d at 1158 (emphasis in original). Because there is no automatic exemption for "uniquely governmental functions," even where duties are embodied in a federal statute, we must look "further afield" for possibly analogous local law. *United States v. Olson*, 546 U.S. 43, 46 (2005). Lacking any obvious local law analogs, Hornbeck tries a more oblique tack and argues the Coast Guard's malfeasance satisfies two common law tort theories: (1) negligence for failure to exercise due care while undertaking a service and (2) intentional trespass to an intangible chattel. Neither theory holds water.

### 1. Negligent Undertaking

Hornbeck argues that D.C. courts apply the well-recognized negligent rescuer duty. This doctrine — sometimes referred to as the "good Samaritan" doctrine, *Fed. Ins. Co. v. Thomas Perry, Inc.*, 634 F. Supp. 349, 353 (D.D.C. 1986), and famously articulated by Justice Cardozo in *Glanzer v. Shepard*, 135 N.E. 275, 276 (N.Y. 1922) — has been cited approvingly in the local jurisdiction. *Security Nat'l Bank v. Lish*, 311 A.2d 833, 834–35 (D.C. 1973). The D.C. Court of Appeals has also cited with approval § 323 of the Second Restatement of Torts, *see Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1097 (D.C. 1994), which outlines the negligent rescuer duty. Under § 323,

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking . . . .

*Restatement (Second) of Torts* § 323 (1965).

The negligent rescuer duty applies to actions the defendant "should recognize as necessary for the protection of the other's person or things." *Id.* The assignment of the phase-out date of single-hulled oil vessels was not for Hornbeck's protection. We see no way of construing OPA, which was passed in response to the Exxon Valdez oil spill, as an effort to protect the *owners* of single-hulled oil vessels. *See Hornbeck*, 424 F. Supp. 2d at 39–40 (discussing OPA's passage). OPA was designed "to streamline federal law so as to provide quick and efficient cleanup of oil spills, compensate victims of such spills, and internalize the costs of spills within the petroleum industry." *Rice v. Harken Exploration Co.*, 250 F.3d 264, 266 (5th Cir. 2001) (citing Senate Report No. 101-94, *reprinted in* 1990 U.S.C.C.A.N. 722, 723).

## 2. Intentional Trespass Against Intangible Chattels

In addition to its negligence theory, Hornbeck also attempts to characterize its claim as an intentional tort. Hornbeck advances, apparently for the first time, a theory of trespass to intangible chattels. We cannot find a meaningful indication that it raised this theory before the district court, however. Hornbeck only cites its opposition to the motion to dismiss as evidence that it raised the claim before the district court. But its arguments below focused only on a claim for trespass to *tangible* chattels. For example, Hornbeck stated its claim as:

"the Government[] intentionally intermeddle[d] with another's chattel, *here Hornbeck's Barge*." Pl.'s Opp. to Mot. to Dismiss, 21 (emphasis added). The chattel allegedly trespassed upon was the barge — a tangible chattel, not some intangible right. Although Hornbeck cited some cases dealing with intangible rights, it did not signal that the cases were being used to support any claim for trespass to intangible chattels. Instead, Hornbeck offered cases to support the measurement of damages as tied to lost economic value. *See id.* ("[D]amages are measured by the diminution of the property's value caused by the interference, here the loss of the use of the Barge."). Because Hornbeck never used the phrase "intangible chattels" below, instead referring only generically to "the common law tort of trespass," *id.* at 22, the theory asserted on appeal appears to have been forfeited, as it was not fairly raised before the district court.

Even if Hornbeck's claim of intentional trespass to intangible chattels was not forfeited, it fails on the merits. As support for its theory, Hornbeck cites the proposition that "any intangible generally protected as personal property may be the subject matter of a suit for conversion." *Pearson v. Dodd*, 410 F.2d 701, 707 n.34 (D.C. Cir. 1969). According to Hornbeck, its ethereal "right to use the Barge" is the intangible right which was violated. Appellant Br. at 48. The Restatement makes clear, however, that trespass to intangible chattels refers to documents such as negotiable checks and stock certificates — items in which the property is entirely merged with a document. *Restatement (Second) of Torts* § 242(2) & cmt. e. Hornbeck's claimed "right to use the Barge" is in no way comparable, and the company makes no effort to justify commandeering this ill-fitting doctrine. Indeed, Hornbeck does not even show how its "right to use the Barge" is "generally protected as personal property," *Pearson*, 410 F.2d at 707 n.34, nor does it cite any authority to support this necessary proposition. The alleged trespass to intangible chattels is an untenable analog.

11

Lastly, Hornbeck suggests the government has forfeited its arguments against the proposed local analogs by presenting different arguments on appeal than it advanced below. What Hornbeck fails to realize is that the government's arguments cannot be forfeited — whether or not they were raised below — because they go to subject-matter jurisdiction. The extent of the waiver of sovereign immunity under the FTCA is coextensive with the district court's subject-matter jurisdiction to hear the case. *See Lehman v. Nakshian*, 453 U.S. 156, 160 (1981). Arguments against subject-matter jurisdiction cannot be waived. *See Akinseye v. D.C.*, 339 F.3d 970, 971 (D.C. Cir. 2003). Given our resolution of this case, we decline to address the additional arguments raised by the government, including its APA-preemption theory under *Jayvee Brand, Inc. v. United States*, 721 F.2d 385 (D.C. Cir. 1983).

## III.  Conclusion

Hornbeck has presented nothing to persuade us that D.C. law contains any local analog which can support a claim under the FTCA.  The alleged injury in this case is grounded entirely in federal law, not local law.  Moreover, Hornbeck's attempted analogs simply do not apply to the circumstances presented by this case.  We therefore conclude that Hornbeck cannot bring its claims under the FTCA.  The ruling of the district court is affirmed.

*So ordered.*

ROGERS, *Circuit Judge*, concurring in part: The court is in agreement that the claim of Hornbeck Offshore Transporation, LLC ("Hornbeck") for damages under the Federal Tort Claims Act ("FTCA") must fail because the duties assumed by the United States under the relevant federal statute and U.S. Coast Guard regulations lack a local analogue under District of Columbia law. Torts under District of Columbia law for negligent undertaking and intentional interference with a chattel do not support the alleged violations of which Hornbeck complains. *See* Op. at 8-11. I write, therefore, only to point out that neither Supreme Court nor this court's precedent holds that an FTCA claim is viable only if it exists entirely independently from federal statutory or regulatory duties. *See United States v. Olson*, 546 U.S. 43 (2005); *Art Metal-USA, Inc. v. United States*, 753 F.2d 1151 (D.C. Cir. 1985). To the extent the court suggests otherwise, it goes, unnecessarily, beyond precedent.

The FTCA provides that "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. *See also id.* § 1346(b)(1) (authorizing private tort actions against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the laws of the place where the act or omission occurred"). Thus, in *Art Metal*, this court held that the FTCA will recognize liability for violations of federal law only if "the duties set forth in the federal law are analogous to those imposed under local tort law." *Art Metal*, 753 F.2d at 1158; Op. at 8. In other words, federal statutes and regulations are not irrelevant to the inquiry and may provide "evidence that the government has assumed duties analogous to those recognized by local tort law," *Art Metal*, 753 F.2d at 1158, and/or "the standard of care against which the government's conduct should be assessed," *id.* at 1159. The court observed that such evidence may even result in the conclusion that the violation constituted negligence *per se*

under local law.  *Id.*

This approach is consistent with the Supreme Court's repeated admonition to lower courts not to look for exact analogues in the FTCA context, but rather to look "further afield," *Olson*, 546 U.S. at 46, for similar, rather than identical, torts as "the words 'like circumstances' do not restrict a court's inquiry to the same circumstances," *id*. (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955)).  *See also Rayonier, Inc. v. United States*, 352 U.S. 315, 318-319 (1957).  In *Olson*, the Supreme Court discussed *Indian Towing* and explained, "[p]rivate individuals, who do not operate lighthouses, nonetheless may create a relationship with third parties that is similar to the relationship between a lighthouse operator and a ship dependent on the lighthouse's beacon." 546 U.S. at 47 (citing *Indian Towing*, 350 U.S. at 64-65, 69).  Consistent with this instruction, the proper understanding of the dispositive consideration in *Art Metal* was not that the duty violated existed only under federal law, but rather that the court could not identify, nor had the plaintiff proffered, an analogous duty under local law.  Despite a lengthy discussion of the relationship between the FTCA requirement that federal legal duties correspond to some local law, *Art Metal*, 753 F.2d at 1156-59, the court's decisive analysis appears when it examines the proffered local analogues and finds none viable.  *Id.* at 1159.

The court's emphasis today on the Coast Guard's violation of a federal law, Op. Part II.A., is therefore misplaced.  The question of whether the Coast Guard violated federal law was decided in *Hornbeck Offshore Transp., LLC v. U.S. Coast Guard*, 424 F. Supp.2d 37 (D.D.C. 2006).  The question now before this court is whether there is an analogue under District of Columbia law to the duties imposed on the Coast Guard under the federal statute and regulations:  if there is, then Hornbeck may be able to recover the damages it seeks; if there

3

is not, it cannot. Yet the court would reject Hornbeck's appeal on the different ground that "the only basis for Hornbeck's claim is a federal statute, not any state or local law." Op. at 5. The court here thus appears to imply an exception for actions that are uniquely governmental. But, as the court notes in Part II.B, Op. at 8, the Supreme Court has rejected the notion of an automatic exception to FTCA liability for "unique governmental functions," *Olson*, 512 U.S. at 45, and in *Olson* specifically rejected as "too narrow," *id.* at 46, the Ninth Circuit's premise that "federal mine inspections being regulatory in nature are such unique governmental functions, since there is no private sector analogue for mine inspections," *id.* at 45 (internal quotations omitted). *See also Rayonier,* 352 U.S. at 318-319; *Indian Towing*, 350 U.S. 61, 64 (1955). The Court then cited with approval cases where five circuit courts of appeals analyzed proffered local tort analogues. *Olson*, 546 U.S. at 47 (citing *Dorking Genetics v. United States*, 76 F.3d 1261 (2nd Cir. 1996); *Florida Auto Auction of Orlando, Inc. v. United States*, 74 F.3d 498 (4th Cir. 1996); *Ayala v. United States*, 49 F.3d 607 (10th Cir. 1995); *Myers v. United States*, 17 F.3d 890 (6th Cir. 1994); *Howell v. United States*, 932 F.2d 915 (11th Cir. 1991)). Further, in each of the cases this court now cites for the proposition that "[i]t is virtually axiomatic that the FTCA does not apply where the claimed negligence arises out of the failure of the United States to carry out a [federal] statutory duty in the conduct of its own affairs," Op. at 6 (alterations in original) (citing *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532 (1st Cir. 1997); *United States v. Agronics, Inc.*, 164 F.3d 1343 (10th Cir. 1999); *Johnson v. Sawyer*, 47 F.3d 716 (5th Cir. 1995) (en banc)), the courts considered and rejected the proffered tort analogues inasmuch as there could be no automatic exemption for uniquely governmental functions, *see Sea Air Shuttle*, 112 F.3d at 536; *Agronics*, 164 F.3d at 1346; *Johnson*, 47 F.3d at 728-738. In any event, these decisions predate *Olson*, which represents the Supreme Court's most recent exhortation of the

relevant law in this area.

Because the salient point is that the federal duties at issue are not analogous to the duties under District of Columbia law on which Hornbeck relies, I would affirm the judgment for the United States not because Hornbeck suffered an injury under a federal statute, but rather because Hornbeck failed to proffer a local tort analogue that was sufficiently analogous to the Coast Guard's unlawful conduct. While the fact that the Coast Guard was "carry[ing] out a [federal] statutory duty in the conduct of its own affairs" might raise a red flag that a viable local analogue will not exist, "the pertinent inquiry is whether the duties set forth in the federal law are analogous to those imposed under local tort law." Op. at 8; *Olson*, 546 U.S. at 47; *Art Metal*, 753 F.3d at 1159. On this point, and on the point that Hornbeck has identified no local analogue to the Coast Guard's duties at issue, Op. at 8-11, there is unanimity.