# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued October 12, 2011     Decided January 17, 2012

No. 11-5023

LEE PAIGE,
APPELLANT

v.

DRUG ENFORCEMENT ADMINISTRATION,
APPELLEE

————

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cv-00644)

————

*Ward A. Meythaler* argued the cause for the appellant.

*Helen L. Gilbert*, Attorney, United States Department of Justice, argued the cause for the appellee. *Tony West*, Assistant Attorney General, *Ronald C. Machen Jr.*, United States Attorney, and *Mark B. Stern*, Attorney, were with her on brief. *R. Craig Lawrence*, Assistant United States Attorney, entered an appearance.

Before: HENDERSON, TATEL and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Appellant Lee Paige (Paige) appeals the district court's grant of summary judgment to the United States Drug Enforcement Administration (DEA) on claims he brought under the Privacy Act, 5 U.S.C. § 552a, and the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 *et seq.*  For the reasons set forth below, we affirm the district court.

## I. FACTS

Paige is a special agent in the DEA's Orlando District Office.  On Friday, April 9, 2004,[1] he spoke to a group of about fifty children and parents at a community center in Orlando, Florida.  At the time, Paige was an undercover agent who also often spoke to schools and other organizations to educate the public about the dangers of illegal drugs.  During the presentation, Paige displayed his DEA-issued firearm while discussing gun safety and telling the audience that firearms should be handled only by professionals like himself. His firearm accidentally discharged and he shot himself in the thigh.

With Paige's knowledge, one of the parents in attendance video-recorded Paige's presentation—including the accidental discharge—on a mini-DV cassette tape (Mini-DV).  The video was over one hour long and was the only video-recording of Paige's presentation.  The parent turned the Mini-DV over to the DEA agents who arrived on the scene that night.  Later that night, Robert Patterson, another DEA

---

[1]  The facts come from Paige's amended complaint and the materials the parties submitted in support of their respective motions for summary judgment.  All dates referred to herein are in 2004 unless otherwise noted.

special agent from the Orlando District Office, copied the Mini-DV onto a VHS tape.

The DEA Office of Inspections (IN), headquartered in Arlington, Virginia, is responsible for investigating all shooting incidents involving DEA personnel. Upon receiving notification of a shooting, IN determines whether to immediately dispatch inspectors from IN headquarters to investigate the shooting or to delegate the investigation to the local DEA office. On April 12, after receiving notice of the shooting involving Paige, IN informed Steve Collins, the Assistant Special Agent in Charge in the Orlando District Office, that it did not intend to send inspectors to Orlando. IN also asked Collins to send IN a copy of the video-recording. That same day, Collins gave the Mini-DV and the VHS to Peter Gruden, a DEA supervisor in the Orlando District Office. Collins instructed Gruden to mail the VHS to IN per its request; Gruden mailed the VHS to IN later that week. On April 14 or 15, IN decided to send two inspectors from headquarters to investigate the shooting because an agent had been injured and because of concern about adverse publicity resulting from the incident.

Sometime during the week of April 12, Gruden directed technical personnel at the Orlando District Office to make "a few" additional copies of the Mini-DV. Def.'s Mot. Summ. J., Ex. 11, *Paige v. U.S. Drug Enforcement Admin.*, No. CV 01:06-644, at 114 (D.D.C. May 16, 2008).[2] The copies were made on compact discs (CDs). The video appearing on the CD was four minutes, nine seconds (4:09 video) in duration and it depicted only the accidental discharge portion of the Mini-DV. Gruden provided the 4:09 video to several individuals. He sent one copy to William Lutz, the head of

---

[2] The DEA technician who made the copies stated in his deposition that Gruden requested four copies of the Mini-DV.

the DEA Firearms Training Unit at Quantico, Virginia.[3] Gruden also sent copies to two friends, DEA Special Agents Steven Derr and Rick Bendekovic. Gruden gave another copy to Kevin Scully, then a DEA agent in the Orlando District Office, but Scully returned the video to Gruden the same day Gruden gave it to him.[4] Finally, according to Gruden's deposition, at Collins's request, he sent a copy of the 4:09 video to the DEA Miami Field Division Management.[5]

On April 16, an IN program analyst at IN headquarters opened a file for the Paige investigation (IN file). The file was retrievable by Paige's name.[6] It consisted of two parts: a correspondence file (maintained by the IN program analyst) and an investigative file. The investigative file included the evidence gathered by Gruden and the IN inspectors.

The two IN inspectors traveled to Orlando on April 19 and returned to IN headquarters on April 21. While in Orlando, the IN inspectors obtained the Mini-DV from Gruden. At some point after returning to IN headquarters,

---

[3] Along with the 4:09 video, Gruden sent Lutz a copy of a DEA form Gruden had prepared detailing Paige's accidental discharge. The form, entitled "Report of Shooting," recited that it was to be submitted to the Firearms Training Unit and to IN.

[4] Scully later gave a different copy of the 4:09 video to Kevin Clark, a DEA special agent in the Tampa District Office.

[5] Within a few months of the accidental discharge, a copy of the 4:09 video was sent via interoffice mail to the DEA firearms training office in Miami.

[6] The IN program analyst labeled the file "IN-GB-04-032S / SA Lee Paige." "IN" stands for Office of Inspections; "GB" is the Orlando District Office designator; "04" are the last two digits of the fiscal year; "032" is the assigned number of the case; and "S" signifies that the investigation is a shooting. "SA" stands for Special Agent.

they also received the VHS Patterson made the night of the shooting. One of the IN inspectors also had additional copies of the Mini-DV made on digital video discs (DVDs) after returning to IN headquarters. The DVDs were 23 minutes, 34 seconds in length and were included in the IN file. One of the IN inspectors also had a copy of the Mini-DV made with the accidental discharge portion excised; it was given to the parent who had made the original video-recording of Paige's presentation.

In late April and early May, Paige's accidental discharge was reported in the press. The reports stated that a DEA agent had shot himself in the leg but Paige was not identified by name. A version of the 4:09 video began to appear on internet websites and on the DEA's internal e-mail system (known as Firebird) at some point between April 2004 and early March 2005. The DEA Office of Professional Review (OPR) conducted a one year long investigation into the release of the 4:09 video on the internet and on Firebird but was unable to determine who released it.[7]

Paige filed suit against the DEA in April 2006, alleging the disclosure of the 4:09 video violated the Privacy Act and the FTCA. After completing discovery, Paige moved for partial summary judgment and the DEA moved for summary judgment on all claims. On December 29, 2010, the district court granted summary judgment to the DEA. *Paige v. U.S. Drug Enforcement Admin.*, No. CV 1:06-644, 2010 WL 7758769 (D.D.C. Dec. 29, 2010). The court held that Paige failed to establish the elements of his Privacy Act claim—specifically, that the 4:09 video was retrieved from a system of records and that the disclosure was intentional or willful.

---

[7] During its investigation, OPR was able to recover the 4:09 videos sent to Derr, Bendekovic and the DEA firearms training office in Miami.

*Id*. at \*2-\*9. The court also concluded that Paige's FTCA claim failed because he did not establish all of the elements under Florida law for the tort of invasion of privacy by public disclosure of a private fact. *Id*. at \*9-\*11. Paige timely appealed.

## II. ANALYSIS

We review the district court's grant of summary judgment de novo. *Maydak v. United States*, 630 F.3d 166, 174 (D.C. Cir. 2010). "Summary judgment is appropriate only where there is 'no genuine issue as to any material fact' and, viewing the evidence in the light most favorable to the nonmoving party, 'the moving party is entitled to a judgment as a matter of law.' " *Id*. (quoting *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment is required "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). A dispute is "genuine" if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *McCready*, 465 F.3d at 7 (internal quotation marks omitted).

## A. Privacy Act

Under the Privacy Act, "[an] individual may bring a civil action against [any] agency" that "fails to comply with any . . . provision of [the Privacy Act] . . . in such a way as to have an adverse effect on [the] individual." 5 U.S.C. § 552a(g)(1)(D). To state a claim for relief, a plaintiff must establish that "(1) the agency violated a provision of the [Privacy] Act, (2) the violation was 'intentional or willful,' 5 U.S.C. § 552a(g)(4), and (3) the violation had an 'adverse effect' on the plaintiff, 5 U.S.C. § 552a(g)(1)(D)." *Maydak*,

630 F.3d at 178. Based on the record before us, Paige's Privacy Act claim fails because it lacks the first element.

Subject to exceptions not relevant here, the Privacy Act prohibits a federal agency[8] from "disclos[ing] any record which is contained in a system of records by any means of communication to any person." 5 U.S.C. § 552a(b). The parties agree that the Mini-DV, the VHS, the 4:09 video and the DVDs are all "record[s]"[9] and that the relevant "system of records" is the IN file of the investigation of Paige's accidental discharge (designated IN-GB-04-032S / SA Lee Paige). The parties also agree that the version of the video of Paige's accidental discharge that was disclosed on the internet and on Firebird is the 4:09 video made at Gruden's request from the Mini-DV sometime during the week of April 12,

---

[8]     The Privacy Act applies to "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552a(a)(1) (incorporating definition of "agency" at 5 U.S.C. § 552(f)(1)).

[9]     Under the Privacy Act, a "record" is:

> any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph[.]

5 U.S.C. § 552a(a)(4); *see also Albright v. United States*, 631 F.2d 915, 920 (D.C. Cir. 1980) ("As long as [a] tape contains a means of identifying an individual by picture or voice, it falls within the definition of a 'record' under the Privacy Act.").

8

2004. The parties do not agree, however, that the 4:09 video is a "record . . . contained in a system of records" under section 552a(b).

The Privacy Act defines a "system of records" as:

> a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual[.]

5 U.S.C. § 552a(a)(5). "A system of records exists only if the information contained within the body of material is both *retrievable* by personal identifier and actually *retrieved* by personal identifier." *Maydak*, 630 F.3d at 178 (emphasis in original; internal quotation marks omitted). To violate section 552a(b), then, a disclosure generally must result from an individual's having "actually retrieved" the information from the system of records in which it is contained. *Armstrong v. Geithner*, 608 F.3d 854, 857 (D.C. Cir. 2010); *see also Bartel v. FAA*, 725 F.2d 1403, 1408 (D.C. Cir. 1984) ("[Section 552a(b)] prohibits nonconsensual disclosure of any information that has been retrieved from a protected record.").

To begin with, Paige argues that the 4:09 video was copied from a record contained in a system of records, that is, the Mini-DV. But the Mini-DV was not a covered record at the time the 4:09 video was copied from it because the information on the Mini-DV was not retrievable by Paige's name or other personal identifier, to wit: it was neither labeled nor filed by Paige's name or other personal identifier, and Paige has offered no evidence that information on the Mini-DV "was actually *retrieved* by [a] personal identifier" while in Gruden's possession. *Maydak*, 630 F.3d at 178 (emphasis in original; internal quotation marks omitted); *see also Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1460 (D.C. Cir.

1996) (the definition of a "system of records" "suggest[s] strongly that a group of records should generally not be considered a system of records unless there is actual retrieval of records keyed to individuals").

Paige argues that an IN file, and therefore a "system of records," was created automatically when IN was notified of Paige's accidental discharge and that every item Gruden had in his possession that related to Paige's accidental discharge—including the Mini-DV—was contained in this "system of records." But *Henke* makes clear that "retrieval *capability* is not sufficient to create a system of records." *Id.* (emphasis added); *see also Maydak*, 630 F.3d at 178. Here, no system of records existed from which information was in fact retrieved by Paige's name or other personal identifier until the IN program analyst opened the IN file at IN headquarters on April 16.

At some point between April 19 and April 21, Gruden gave the Mini-DV to the IN inspectors who then placed the Mini-DV in the IN file. Upon its inclusion in the IN file, the Mini-DV was then contained in a system of records because the IN file was both "*retrievable* by personal identifier and actually *retrieved* by personal identifier." *Id.* (emphasis in original; internal quotation marks omitted). By then, however, the 4:09 video had already been copied from the Mini-DV. And disclosure of the 4:09 video was not prohibited under the Privacy Act simply because the Mini-DV *subsequently* became a "record which is contained in a system of records." 5 U.S.C. § 552a(b); *see Armstrong*, 608 F.3d at 859-60 (disclosure of information contained in record within agency's system of records not prohibited where retrieval occurred before record became part of agency's system of records). Furthermore, there is no evidence that a copy of the 4:09 video was made from the Mini-DV *after* the latter was placed in the IN file.

Moreover, the record reflects that the 4:09 video itself was *not* "contained in a system of records." 5 U.S.C. § 552a(b). Only three versions of the accidental discharge video were included in the IN file: the original Mini-DV, the VHS and the DVDs created at the request of one of the IN inspectors. Although the OPR inspector responsible for investigating the disclosure of the accidental discharge video stated in his deposition that Gruden told him the 4:09 video was sent to IN, he later corrected his statement, declaring that there was "no indication that a 4:09 version of the video footage of S[pecial] A[gent] Lee Paige shooting himself was ever placed in the Office of Inspections file IN-GB-04-32S." Decl. of Kent Reinke, Def.'s Mot. Summ. J., Ex. 42, *Paige v. United States Drug Enforcement Admin.*, No. CV 1:06-644 at 2 (D.D.C. May 13, 2008).

In addition, at no point was the 4:09 video retrievable or retrieved by Paige's name or other identifying particular, the *sine qua non* of a "system of records." *Id.* The 4:09 video was unmarked and bore no notation indicating its contents. Gruden used a file number for documents and items related to Paige's accidental discharge different from that assigned by the IN program analyst and without Paige's name or other personal identifier.[10] While Paige is correct that the "assignment of a number to the IN file . . . [is] not a requirement to the existence of a system of records," Appellant's Br. at 26, he has offered no evidence that the file Gruden maintained was retrievable or retrieved by Paige's name or other personal identifier.

---

[10] Gruden used file number "GFAO-04-9020" and titled the file "Assaults/Threats/Shootings." *See* Pl.'s Mot. Partial Summ. J., Ex. 1, *Paige v. U.S. Drug Enforcement Admin.*, No. CV 01:06-644, at 17-22, 24-25 (D.D.C. May 16, 2008).

11

Paige's reliance on *Maydak v. United States*, *supra*, is misplaced. In that case, we concluded that a box containing unmarked photographs of prisoners "may be" a system of records because the records (i.e. the photographs) were in fact retrieved by a personal identifier: the prisoner's image. *Maydak*, 630 F.3d at 178. Here, however, neither the 4:09 video nor the Mini-DV was retrieved by Paige's name or other personal identifier. Granted, the 4:09 video contains personally identifying information—namely, Paige's video image—but it was neither "*retrievable* by" nor "actually *retrieved* by" Paige's image. *Id*. (emphasis in original; internal quotation marks omitted); *see also Henke*, 83 F.3d at 1460. Paige's reading would eviscerate the "system of records" limitation, which applies to several Privacy Act provisions, *see* 5 U.S.C. § 552a(b), (c), (d), (e) and (f), by making any record containing personally identifying information, regardless whether it is retrievable or actually retrieved by that information, a covered record. *See McCready*, 465 F.3d at 11 (agency only "held accountable under Privacy Act provisions tied to a system of records requirement for records it can easily retrieve consistent with its day-to-day practice of information management—records found within a 'system of records' ").

Finally, Paige relies on our decision in *Bartel v. FAA*, *supra*, in an attempt to avoid the retrieval requirement. In *Bartel*, we created a narrow exception to the retrieval requirement if an agency employee responsible for creating a covered record later discloses information contained therein based on his personal knowledge of the records and without actually retrieving it from the agency's system of records. *Bartel*, 725 F.2d at 1407-11. We made clear in *Bartel*, however, that the exception to the actual retrieval requirement was tied to "*the factual context of th*[*at*] *case*," *id*. at 1409 (emphasis in original), and we have subsequently declined to extend the exception beyond the *Bartel* facts. *See Armstrong*,

608 F.3d at 859-60. Gruden—who arguably "retrieved" the 4:09 video from the Mini-DV—did not "order[] the investigation which resulted in the [creation of the 4:09 video], ma[k]e a putative determination of wrongdoing based on the investigation, [or] disclose[] that putative determination." *Bartel*, 725 F.2d at 1411; *see also Armstrong*, 608 F.3d at 860. Furthermore, there is no evidence in the record before us that anyone involved in the IN investigation at IN headquarters disclosed the 4:09 video, thus making the exception inapplicable.

Although no violation of section 552a(b) occurred,[11] the DEA's handling of the 4:09 video fell short of the Privacy Act's "design . . . to prevent . . . such actions as the publicizing of information of a sensational or salacious nature or of that detrimental to character or reputation." *Bartel*, 725 F.2d at 1411 n.15 (internal quotation marks and citation omitted). The widespread circulation of the accidental discharge video demonstrates the need for every federal agency to safeguard video records with extreme diligence in this internet age of iPhones and YouTube with their instantaneous and universal reach. The DEA's treatment of the video-recording—particularly the creation of so many different versions and copies—undoubtedly increased the likelihood of disclosure and, although not an abuse of a

---

[11] Paige asserts violations of other Privacy Act provisions on appeal, but he failed to raise them in the district court. "[W]hile review of the grant of summary judgment is *de novo,* this court reviews only those arguments that were made in the district court, absent exceptional circumstances." *Potter v. District of Columbia*, 558 F.3d 542, 547 (D.C. Cir. 2009). We find no exceptional circumstances here. *See Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 419 n.5 (D.C. Cir. 1992) (listing exceptional circumstances).

system of records, is far from a model of agency treatment of private data.

## B. Federal Tort Claims Act

Paige's second claim is based on the FTCA which provides that the United States is liable for the negligence of a federal employee acting in the course of his employment to the same extent that a "private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 508 (D.C. Cir. 2009). The law of the local jurisdiction—in this case, Florida—determines if an FTCA claim lies. *See Hornbeck Offshore Transp.*, 569 F.3d at 508 ("We look to the law of the local jurisdiction . . . to determine whether there is a local private party analog to [a plaintiff's] claim[].""). Florida law recognizes an invasion of privacy tort by public disclosure of a private fact and the Florida Supreme Court— looking to the Restatement (Second) of Torts (Restatement) § 652D (1977)—defines the elements of the tort as "[1] the publication, [2] of private facts, [3] that are offensive, and [4] are not of public concern." *Cape Publ'ns, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989). Paige satisfies neither the "private facts" nor the "not of public concern" elements.[12]

The invasion of privacy tort by publication of a private fact "applies only to publicity given to matters concerning the private, as distinguished from the public, life of the individual." Restatement § 652D cmt. b. No liability attaches "for giving further publicity to what [a] plaintiff himself leaves open to the public eye." *Id.*; *see Spilfogel v. Fox Broad. Co.*, 433 Fed App'x 724, 725-26 (11th Cir. 2011) (no liability for publishing public facts about an individual).

---

[12] Because Paige does not satisfy these elements, we do not address whether he satisfies the others.

14

The 4:09 video contained no private facts. The accidental discharge occurred in a public place—the Callahan Neighborhood Center[13]—and Paige knew he was being video-recorded. Accordingly, the publication of the 4:09 video merely gave "further publicity to what [Paige] himself le[ft] open to the public eye." Restatement § 652D cmt. b; *see Spilfogel*, 433 Fed App'x at 725-26 (publication of video of plaintiff's arrest on public street did not disclose private facts because video did not relate to plaintiff's family unit, health or well-being); *Heath v. Playboy Enters., Inc.*, 732 F. Supp. 1145, 1148-49 (S.D. Fla. 1990) ("[a] photograph taken in a public place is not private" and publication thereof does not disclose private facts); *see also* Restatement § 652D cmt. b (listing as private facts "[s]exual relations," "family quarrels," "many unpleasant or disgraceful or humiliating illnesses," "most intimate personal letters" and "most details of a man's life in his home"). Even though certain facts about the accidental discharge were not publicized before the disclosure of the 4:09 video—including Paige's name, likeness and what he said immediately before the accidental discharge—these facts were nonetheless public because Paige's presentation was itself public. *See Spilfogel*, 433 Fed App'x at 725-26 (no invasion of privacy by giving publicity to individual's identity and conduct occurring in public); Restatement § 652D cmt. b (individual's privacy not invaded "when the defendant gives publicity to a[n] . . . activity in which the plaintiff is engaged in dealing with the public"). Paige is likely correct that the 4:09 video depicts the accidental discharge more graphically than a newspaper article, but the invasion of privacy tort "focuses on the *matter* being published," not the medium in which is it published. *Heath*, 732 F. Supp. at 1149 n.9 (emphasis in original).

---

[13] The Callahan Neighborhood Center was open to the public at the time Paige gave his presentation.

15

Paige's FTCA claim also fails because the accidental discharge was a matter of public concern. "[T]he requirement of lack of public concern is a formidable obstacle" and matters of legitimate public concern are generally those matters that are considered "newsworth[y]." *Cape Publ'ns, Inc.*, 549 So. 2d at 1377 (internal quotation marks omitted). Paige was acting as a DEA special agent when he spoke at the Callahan Community Center and his speech was therefore of public concern. *See e.g.*, *Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 789 (Ariz. 1989) ("[T]he public has a legitimate interest in the manner in which law enforcement officers perform their duties."). That the accidental discharge received media coverage even before the disclosure of the 4:09 video supports the conclusion that the occurrence was one of public concern. *See Cape Publ'ns, Inc. v. Bridges*, 423 So. 2d 426, 427 (Fla. Dist. Ct. App. 1982) ("Within the scope of legitimate public concern are matters customarily regarded as 'news.' ").[14]

---

[14] The Florida Supreme Court has recognized that in determining whether a matter is of public concern, the issue is whether the matter " 'generally, as opposed to the specific identity contained within it, involved a matter of [public concern].' " *Cape Publ'ns, Inc.*, 549 So. 2d at 1379 (quoting *The Florida Star v. B.J.F.*, 491 U.S. 524, 536-37 (1989)). The identity of an individual involved in a matter of public concern is also a matter of public concern unless a private fact about him is involved. *Compare Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 503 (Fla. Dist. Ct. App. 1993) (identity of school bus driver with criminal record constituted matter of public concern because "public had a right to know that many school bus drivers had criminal records" and driver's criminal record was public fact) *with Doe v. Univision Television Grp., Inc.*, 717 So. 2d 63, 64 (Fla. Dist. Ct. App. 1998) (although news story about problems with plastic surgeries performed abroad was matter of public concern, identity of patient not matter of public concern because patient's involvement was private fact). As

16

For the foregoing reasons, we affirm the district court's grant of summary judgment to the DEA.

*So ordered.*

---

discussed above, Paige's role in the accidental discharge was a public fact. Accordingly, the 4:09 video—including Paige's likeness—was a matter of public concern.